# EXHIBIT B

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

WENDY CUNNING, an individual,

                   Plaintiff,

     vs.

SKYE BIOSCIENCE, INC., a Nevada Corporation; EMERALD HEALTH SCIENCES, INC., a Canadian Corporation; and DOES 1-10, inclusive,

                   Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: 8:21-cv-00710-DOC-KES

**[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER**

Final Pretrial Conference

Judge:       Hon. David O. Carter
Trial Date:   January 3, 2023
Courtroom:  10A

1-

**[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER**

# TABLE OF CONTENTS

**1. THE PARTIES** ................................................................................... **1**

**2. FEDERAL JURISDICTION & VENUE** ....................................... **1**

**3. TRIAL ESTIMATE** ...................................................................... **1**

**4. JURY TRIAL** ................................................................................. **1**

**5. ADMITTED FACTS THAT REQUIRE NO PROOF** ................. **1**

**6. STIPULATED FACTS WITHOUT PREJUDICE TO OBJECTIONS** ............. **3**

**7. CLAIMS & DEFENSES TO BE PRSENTED AT TRIAL** ................................. **3**

**8. FOLLOWING ISSUES REMAINING TO BE TRIED** ................................ **24**

**9. COMPLETION OF DISCOVERY** ........................................... **24**

**10. DISCLOSURES UNDER F.R.CIV.P. 26(A)(3)** ........................ **24**

**11. WITNESS LISTS** ....................................................................... **26**

**12. LAW & MOTION MATTERS AND MOTIONS *IN LIMINE*** ........................ **26**

**13. BIFURCATION OF ISSUES** ................................................... **29**

**14. SUPERCEDING OF PLEADINGS** ......................................... **30**

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Ackerman v. Western Electric Co.*,
    643 F. Supp. 836 (N.D. Cal. 1986) ...................................................................16

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...........................................................................................12

*Ayala v. Frito Lay, Inc.*,
    263 F. Supp. 3d 891 (E.D. Cal. 2017)...............................................................14

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)...........................................................................................12

*Butler v. Prime Healthcare Centinela, LLC*,
    No. CV 19-1738 PA (SSX), 2019 WL 3207818 (C.D. Cal. May 10, 2019) ...........................13

*Dunn v. White*,
    880 F.2d 1188 (10th Cir. 1989) .........................................................................12

*Feast-Williams v. Merrill Lynch Fenner Pierce & Smith Inc.*,
    No. CV1806451SJOSSX, 2018 WL 9517023 (C.D. Cal. Dec. 18, 2018)...........................14

*Feldman v. L. Enf't Assocs. Corp.*,
    752 F.3d 339 (4th Cir. 2014) ...............................................................................4

*Harp v. Charter Commc'ns, Inc.*,
    558 F.3d 722 (7th Cir. 2009) ...............................................................................4

*McKennon v. Nashville Banner Pub. Co.*,
    513 U.S. 352 (1995)...........................................................................................15

*Ngo v. Reno Hilton Resort Corp.*,
    140 F.3d 1299 (9th Cir. 1998) ...........................................................................16

*Robbins v. Okla.*,
    519 F.3d 1242 (10th Cir. 2008) .........................................................................12

*Sherman v. Network Commerce, Inc.*,
    No. 06-35575, 2009 WL 3017297 (9th Cir. Sept. 22, 2009) ...............................12

*Tapia v. Hyatt Corporation*,
    No. 8:20-cv-02346-DOC-JDEx, 2021 WL 3706650 (C.D. Cal. June 30, 2021)...................13

*Tides v. The Boeing Co.*,
    644 F.3d 809 (9th Cir. 2011) ...............................................................................4

**[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER**

*Van Asdale v. Int'l Game Tech.*,
    577 F.3d 989 (9th Cir. 2009) ...........................................................................4, 13

*Xie v. Hospira, Inc.*,
    No. 10 C 6777, 2011 WL 3921451 (E.D. Ill. Sept. 2, 2011) ...................................4

**California Cases**

*Lawson v. PPG Architectural Finishes, Inc.*,
    12 Cal.5th 703 (2022) .............................................................................................5

*Taylor v. Superior Ct.*,
    24 Cal.3d 890 (1979) .............................................................................................16

**Federal Statutes**

18 U.S.C.
    § 1514A(a)(1).........................................................................................................4
    § 1514A(b).............................................................................................................4

28 U.S.C.
    § 1331....................................................................................................................1
    § 1367....................................................................................................................1
    § 1391(b)(2) and (c)..............................................................................................1

49 U.S.C.
    § 42121(b)(2)(B)(ii)..............................................................................................4

Sarbanes Oxley Act of 2002, 18 U.S.C.
    § 1514A ...............................................................................1, 11, 13, 19

SOX, 18 U.S.C.
    § 1514A, *et seq.* ...................................................................................................3

**California Statutes**

Cal. Civ. Code
    § 3294....................................................................................................................3
    § 3294(a)..............................................................................................................16

Cal. Lab. Code
    § 1102.5................................................................................1, 3, 13, 14

**Other Authorities**

29 C.F.R. § 1980.104(b)(1)(i)-(iv)..........................................................................4

Art. I, Section 17 ....................................................................................................15

CACI 2506 ..............................................................................................................14

iii-

**[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER**

CACI 3945 ...................................................................................................................6

CACI 3963 .................................................................................................................15

CACI 4603 ...................................................................................................................5

Fed. R. Civ. P. 12(b)(6) ............................................................................................12

Fed. R. Civ. P. 16 .......................................................................................................1

Fed. R. Civ. P. 26(a)(3) ............................................................................................24

Fed. R. Evid. 401, 402, and 403 .........................................................................27, 28

Fed. R. Evid. 802 .......................................................................................................28

FRE 403, 602, 901 .....................................................................................................25

FRE 602, 802 901 ......................................................................................................25

L.R. 16 .........................................................................................................................1

L.R. 16-2.7 .................................................................................................................26

L.R. 16-6.1 .................................................................................................................25

L.R. 32-1 ....................................................................................................................26

L.R. 51-1 and (b) .........................................................................................................1

-iv-

**[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER**

Following pretrial proceedings, pursuant to F.R.Civ.P. 16 and L.R. 16, IT IS ORDERED:

1.    The parties are:

    a.    Plaintiff – Wendy Cunning ("Plaintiff")

    b.    Defendant – Skye Bioscience, Inc. ("Defendant")

Each of these parties has been served and has appeared. All other parties named in the pleadings and not identified in the preceding paragraph are now dismissed.

The pleadings which raise the issues are:

    c.    The First Amended Complaint (Docket No. 27)

    d.    The Answer to the First Amended Complaint (Docket No. 32)

2.    Federal jurisdiction and venue are invoked upon the grounds:

    a.    Jurisdiction

        a.    The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331 because Plaintiff has brought a claim for whistleblower retaliation under the Sarbanes Oxley Act of 2002, 18 U.S.C. §1514A ("SOX").

        b.    The jurisdiction of this Court is also invoked pursuant to 28 U.S.C. §1367 because Plaintiff's state-based claim for whistleblower retaliation under California Labor Code §1102.5 forms part of the same case or controversy as her SOX claim.

    b.    Venue

        a.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and (c) because all of the events giving rise to Plaintiff's claims arose in Los Angeles County, when Defendant's principal place of business was in Long Beach, California. Additionally, Defendant was authorized to, and did, transact business and day-to-day commercial activities within Los Angeles County.

3.    The trial is estimated to take 4 trial days.

4.    The trial is to be a jury trial. At least seven (7) days prior to the trial date the parties shall file and serve by e-mail, fax, or personal delivery: (a) proposed jury instructions as required by L.R. 51-1 and (b) any special questions requested to be asked on *voir dire*.

5.    The following facts are admitted and require no proof:

**[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER**

a.    On November 3, 2014, Defendant changed its name to "Nemus Bioscience, Inc."

b.    Effective March 25, 2019, Defendant changed its named to "Emerald Bioscience, Inc." or "EMBI"

c.    Effective January 19, 2021, Defendant changed its name to Skye Bioscience, Inc.

d.    At trial, any reference to "Nemus Bioscience, Inc." or "Emerald Bioscience, Inc." refers to Defendant, which are one and the same for purposes of this lawsuit.

e.    On April 20th, 2016, Defendant entered into an Independent Consultant Agreement with Plaintiff to provide consulting services.

f.    On March 1, 2018, Plaintiff became employed by Defendant in the position of Vice President of Business Operations.

g.    On September 28, 2018, Plaintiff signed an Executive Employment Agreement with Defendant.

h.    Plaintiff's employment with Defendant was terminated on July 18, 2019.

i.    Plaintiff filed an administrative claim of whistleblower retaliation under SOX with the federal Occupational Safety and Health Administration ("OSHA") on January 3, 2020;

j.    Defendant is and was, at all times relevant to Plaintiff's claims, a publicly-traded company.

k.    Jim Heppell was deposed as a FRCP Rule 30(b)(6) witness on behalf of Emerald Health Sciences, Inc. ("EHS"). In that capacity, he served as the person most knowledgeable on a number of topics related to this lawsuit for EHS.

l.    Dr. Feryan Ahmed was deposed as a FRCP Rule 30(b)(6) witness on behalf of Glauconix Biosciences, Inc. ("Glauconix"). In that capacity, he served as the person most knowledgeable on a number of topics related to this lawsuit for Glauconix.[1]

---

[1] The parties agree that admitted facts k & l should be read to the jury immediately prior to their testimony at trial.

2-

**[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER**

6.      The following facts, though stipulated, shall be without prejudice to any evidentiary objection:

      a.      None

7.      Claims and Defenses

Plaintiff:

      a.      Plaintiff plans to pursue the following claims against Defendant:

            a.      Claim 1: Defendant violated the whistleblower retaliation provision of SOX, 18 U.S.C. §1514A, *et seq*.

            b.      Claim 2: Defendant violated California Labor Code §1102.5.

            c.      Claim 3: Plaintiff may recover punitive damages against Defendant under California Civil Code §3294.

      b.      The elements required to establish Plaintiff's claims are:

Claim 1:

- That Defendant was Plaintiff's employer;

- That Plaintiff engaged in protected activity or conduct by providing information relating to conduct that she reasonably believed constituted a violation of a rule or regulation of the Securities and Exchange Commission (including the laws regarding internal controls);

- That Defendant knew or suspected, actively or constructively, that Plaintiff engaged in the protected activity;

- That Plaintiff's employment was terminated;

- That the circumstances were sufficient to raise an inference that Plaintiff's protected activity was a contributing factor in Defendant's decision to terminate her employment; and

- That Plaintiff was harmed by the termination of her employment.

Once Plaintiff establishes these elements, Defendant must show, by clear and convincing evidence, that it would have terminated Plaintiff's employment in the absence of Plaintiff's protected activity.

**[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER**

*See Tides v. The Boeing Co.*, 644 F.3d 809 (9th Cir. 2011); *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989 (9th Cir. 2009); 29 C.F.R. § 1980.104(b)(1)(i)-(iv).

"A contributing factor is 'any factor, which alone or in combination with other factors, tends to affect in any way the outcome of the decision.'" *Feldman v. L. Enf't Assocs. Corp.*, 752 F.3d 339, 348 (4th Cir. 2014). The "same-decision" defense comes from 49 U.S.C. §42121(b)(2)(B)(ii), which applies to SOX claims. *See* 18 U.S.C. §1514A(b).

**The Parties do not agree on the following:**

Defendant contends that to establish that she engaged in protected activity under SOX, Plaintiff must prove, by a preponderance of the evidence, all of the following:

(1) she provided information regarding conduct that she reasonably believed constituted a violation of a rule or regulation of the SEC undertaken with an intent to defraud, via a communication to a person working for Skye who had the authority to investigate, discover, or terminate the misconduct;

(2) her communication definitively and specifically related to a violation of a rule or regulation of the SEC;

(3) she had a subjectively reasonable belief that the conduct she reported violated a rule or regulation of the SEC; and

(4) her belief that the conduct she reported violated a rule or regulation of the SEC was objectively reasonable under the circumstances.

*See Van Asdale*, 577 F.3d at 996, 997-1001; 18 U.S.C. § 1514A(a)(1).

To establish that her communication "definitively and specifically" related to a rule or regulation of the SEC, Plaintiff must prove that she communicated specific conduct that constituted a violation of a rule or regulation of the SEC undertaken with an intent to defraud. *See Van Asdale*, 577 F.3d at 997; *Xie v. Hospira, Inc.*, No. 10 C 6777, 2011 WL 3921451, at **2-3 (E.D. Ill. Sept. 2, 2011); *Harp v. Charter Commc'ns, Inc.*, 558 F.3d 722, 725 (7th Cir. 2009).

**Plaintiff disagrees** that these additional elements are either redundant or impose additional factors not required to prove her claims.

-4-

**[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER**

Claim 2:

- That Defendant was Plaintiff's employer;

- That Plaintiff engaged in "protected activity" by: (a) disclosing to an employee of Defendant who had authority to investigate, discover, or correct possible violations of state, federal, or local laws or regulations; and/or (b) refusing to participate in these possible legal violations;

- That Plaintiff had reasonable cause to believe that: (a) the information she disclosed showed possible legal violations by Defendant; and/or (b) Plaintiff's participation in this conduct by Defendant would be amount to legal violations;

- That Defendant terminated Plaintiff's employment;

- That Plaintiff's disclosure of possible legal violations and refusal to participate in them were contributing factors in Defendant's decision to terminate her employment, even if there were other, legitimate, factors;

- That Plaintiff was harmed; and

- That Defendant's conduct was a substantial factor in causing Plaintiff's harm.

Once Plaintiff establishes these elements, Defendant must show, by clear and convincing evidence, that it would have terminated Plaintiff's employment for legitimate reasons even if she had not engaged in protected activity.

*See* Judicial Council of California Civil Jury Instructions ("CACI") No. 4603; *Lawson v. PPG Architectural Finishes, Inc.*, 12 Cal.5th 703 (2022).

Claim 3:

- That Conduct constituting malice, oppression, or fraud was committed by one or more officers, directors, or managing agents of Defendant, who acted on behalf of Defendant; OR

- Such conduct was authorized by one or more officers, directors, or managing agents of Defendant; OR

**[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER**

1    •    One or more officers, directors, or managing agents of Defendant knew of the
2    conduct constituting malice, oppression, or fraud and adopted or approved that conduct after it
3    occurred.
4    *See* CACI 3945.
5    c.    In brief, the key evidence Plaintiff relies on for Claims 1 and 2 and her
6    Claim for Punitive Damages is:
7    Claims 1 and 2[2]
8    1.    Plaintiff Engaged in Protected Activity
9    Plaintiff will present testimonial evidence that she complained to Defendant's CEO,
10   Brian Murphy, and its CFO, Doug Cesario, about possible violations of law, and that she resisted
11   participating in such violations. Further, Plaintiff will present evidence that she did not further
12   complain to Defendant's Board Members because she feared that they were already engaged in
13   suspect behavior and feared retaliation. Specifically, Plaintiff will present the following:
14   •    Testimony that Plaintiff complained to Murphy that he was engaged in insider
15   trading by sharing internal company information with one of the company's largest investors
16   •    Testimony and documentary evidence that Plaintiff complained to Murphy and
17   refused to participate in the issuance of a fraudulent Press Release by Defendant on or around
18   March 12, 2019, which grossly overstated the efficacy of its primary product – a chemical
19   compound to treat glaucoma.
20   •    Testimony that Plaintiff complained to Murphy and Cesario that Murphy was
21   misrepresenting to investors the size of Defendant's market opportunities for its products and
22   documentary evidence in the form of an email to Cesario containing Plaintiff's original analysis
23   (with the non-inflated numbers) of market sizing opportunities.
24
25   ───────────
26   [2] Because the pertinent elements of each claim are substantially the same, Plaintiff will rely on
     almost all of the same evidence to support both. Accordingly, this order condenses the "key
27   evidence in support" sections for both claims into a single statement. Additionally, the parties
     have stipulated that Plaintiff was Defendant's employee and that her employment was
28   terminated. Therefore, these elements are not addressed herein.

6-

**[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER**

- Testimony that Murphy told Plaintiff that Avtar Dhillon, Punit Dhillon, and Jim Heppell were involved in numerous unlawful activities and were affiliated with mafia in Canada.

- Documentary evidence in the form of a report from Citron Research showing that board members Avtar Dhillon and Heppell were involved in unlawful securities violations, such as misleading pump & dump schemes, and that Defendant's current CEO, Punit Dhillon, was forced to resign as CEO of another company (OncoSec) in disgrace.

- Testimony from Avtar Dhillon asserting his 5th Amendment privilege against self-incrimination when asked whether he ever became aware of Plaintiff's complaints about alleged unlawful activity.

- Testimonial and documentary evidence that Avtar Dhillon is currently a criminal defendant in an action by the Securities and Exchange Commission for securities fraud violations and obstruction of justice. [3]

2.  <u>Plaintiff Reasonably Believed that Defendant's Actions Violated the Law</u>

Plaintiff will present testimonial and documentary evidence which demonstrates the reasonableness of her belief with respect to possible legal violations by Defendant:

- Testimonial and documentary evidence that in approximately June or July 2018, Murphy bragged to Plaintiff that he told a major investor, Josh Berkowitz, that Defendant was releasing some if its licenses to UM;

- Testimonial and documentary evidence that this information was not public;

- Testimonial and documentary evidence that shortly after this, Berkowitz and his group of investors sold their shares.

- Testimonial evidence that Plaintiff specifically complained to Murphy that this could be illegal under SEC rules and that Berkowitz should not have sold his shares.

---

[3] That criminal action in the U.S. District Court for the District of Massachusetts (Case 1:21-mj-07174-JCB) is still pending.

7-

**[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER**

- Testimonial and documentary evidence that Berkowitz's alleged Nondisclosure Agreement with Defendant ("NDA") prohibiting him from trading on insider information is immaterial because Defendant admits that Murphy never told Plaintiff about it;

- Testimonial and documentary evidence that, by its own terms, the NDA expired on June 22, 2018, two years after it was signed.

- Testimonial and documentary evidence that Murphy shared with Plaintiff that he was attempting to obtain a job as CEO of a Defendant competitor, Teewinot, and would acquire the released UM licenses to compete with Defendant;

- Testimony that Murphy told Avtar that Teewinot might acquire the released licenses to compete directly with Defendant, and then Defendant reacquired the licenses at significant additional costs.

- Testimonial and documentary evidence that Defendant retained a third party, Glauconix, to examine the efficacy of its primary compound in treating patients.

- Testimonial and documentary evidence that Glauconix examined only three donors and one did not respond to the treatment.

- Testimonial and documentary evidence that when it issued a press release on March 12, 2019 touting the efficacy of its product, Defendant knew that it did not have a final study report yet and Glauconix had asked it to examine two more donors.

- Testimonial and documentary evidence that Glauconix's final report (provided to Defendant on April 3, 2019 – three weeks after the Press Release) specifically indicated that additional donors would be needed to confirm the effectiveness of the treatment

- Documentary evidence in the form of Defendant's March 12, 2019, press release asserting that the Glauconix study showed that is product was effective "across a spectrum of findings" even though it had a failure rate of 33.3%.

- Testimonial and documentary evidence that, after the Press Release was issued on March 12, 2019, Glauconix followed up with Murphy five more times recommending that additional donors be tested and that, in total, Glauconix asked Murphy eight times to conduct additional research.

8-

**[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER**

- Testimonial and documentary evidence that Glauconix specifically stated that the prior study was incomplete and more study was needed;

- Testimonial evidence that Murphy refused to seek approval from Defendant's Board for more testing by Glauconix because he would have to explain the problems with the study;

- Testimonial and documentary evidence that a March 15, 2019, press release issued by Glauconix differed significantly from Defendant's Press Release in its description of the study

- Testimonial and documentary evidence that Murphy reported grossly inaccurate market sizing data for new opportunities to Defendant's Board and the public at a UM media event in June 2019;

- Testimonial and documentary evidence that Murphy and Plaintiff had retained Decision Resources Group ("DRG") at a cost of $18,000 to estimate the market sizes for these new opportunities;

- Testimonial and documentary evidence that while DRG estimated that the market opportunity Defendant's products would be $8.875 billion, Murphy represented to Defendant's Board and at the UM media event that the opportunity was more than $25 billion;

- Testimonial evidence from Murphy that he disregarded DRG's analysis because he obtained higher numbers from "internet searches" and attending conferences

### 3. Plaintiff's Protected Activity Was a Contributing Factor in her Termination

Plaintiff will present testimonial and documentary evidence that her protected activity was a contributing factor in Defendant's decision to terminate her.[4] This includes:

- Testimony and documentary evidence showing a close temporal proximity between Plaintiff's complaints and the termination of her employment.

---

[4] For her SOX retaliation claim, Plaintiff need only show that an **inference** can be drawn that her protected activity was a contributing factor.

**[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER**

- Defendant's discovery responses stating that in 2020 it hired two additional executives to take over her duties.

- Testimony by Murphy that he made a final decision to terminate Plaintiff's employment sometime between June 17 to June 30, 2019.

- Documentary evidence in the form of a proposed organizational chart dated July 12, 2019 (one week before Plaintiff's employment was terminated), showing an anticipated organizational restructuring which kept Plaintiff in her position.

- Testimony by Defendant's witnesses that it still has not moved onto beginning clinical trials three years after Plaintiff's termination.

4.     Plaintiff was Harmed (i.e. Damages)

Plaintiff will present testimony and documentary evidence of lost wages and emotional distress damages arising from Defendant's unlawful actions. This will include: (1) evidence of her lost income as a result of the termination in the form of testimony and documents showing her wages at Defendant, the period of unemployment between the loss of her job and subsequent employment, her job search efforts, and the difference in compensation between her job at Defendant and her current job (which pays less); and (2) testimonial evidence of the emotional distress she suffered, including anxiety attacks, and documentation of medical care for this.

Punitive Damages

As set forth above, Plaintiff will present testimonial and documentary evidence that Defendant and its managing agents, including its CEO, Murphy, and Chairman of the Board, Avtar Dhillon, engaged in or ratified retaliation against Plaintiff for her complaints of protected activity, and that this retaliation amounts to malice, oppression and/or fraud.

Further, Plaintiff will present evidence that Defendant has offered shifting reasons for the termination of her employment. Specifically, Plaintiff will present testimonial and documentary evidence that the reasons Defendant has offered have changed or are false. This includes:

- Documentary evidence in the form of Defendant's statement to OSHA during its investigation of Plaintiff's administrative claims that Plaintiff was fired because of concerns that Defendant's Board of Directors had about her alleged job performance issues;

10-

**[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER**

- Testimony from multiple employees and Board members of Defendant that Plaintiff was <u>not</u> terminated for performance reasons.

- Defendant's written discovery responses that identify as one alleged business reason for terminating Plaintiff's employment the need to prepare for clinical trial development of its prodrug.

- Testimony from Punit Dhillon that in August 2020 – one year after Plaintiff's termination – it was still <u>at least</u> 18 months away from beginning clinical trials because it still needed to run additional studies to obtain approval and needed to raise additional money to fund the trials.

<u>Defendant</u>:

d.    Defendant plans to pursue the following affirmative defenses:

    a.    First Affirmative Defense: Failure to State a Claim

    b.    Third Affirmative Defense: Plaintiff Did Not Engage in Protected Activity Under 18 U.S.C. Section 1514A

    c.    Fifth Affirmative Defense: Statute of Limitations

    d.    Sixth Affirmative Defense: After Acquired Evidence

    e.    Eighth Affirmative Defense: Failure to Mitigate Damages

    f.    Tenth Affirmative Defense:  Punitive Damages Violate Procedural and Substantive Due Process

    g.    Eleventh Affirmative Defense: Facts Alleged Insufficient to Support Claim for Punitive Damages

    h.    Fourteenth Affirmative Defense: Legitimate, Non-Retaliatory Reason

    i.    Fifteenth Affirmative Defense: Legitimate Reasons

e.    The elements required to establish Defendant's affirmative defenses are:

<u>First Affirmative Defense: Failure to State a Claim</u>

Defendant incorporates by reference the elements set forth for Claims 1 and 2 above.

11-

1    A plaintiff's complaint must state a claim upon which relief can be granted. Fed. R. Civ.

2    P. 12(b)(6).  The "complaint must contain sufficient factual matter, accepted as true, to 'state a

3    claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A

4    claim has facial plausibility when the plaintiff pleads factual content that allows the court to

5    draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556

6    U.S. at 678 (emphasis added).  In setting the "facial plausibility" standard, the Court "asks for

7    more than a sheer possibility that a defendant has acted unlawfully," and further noted that a

8    complaint is insufficient if it "pleads facts that are 'merely consistent with' a defendant's

9    liability" and "'stops short of the line between possibility and plausibility of "entitlement to

10   relief."'"  *Iqbal*, 556 U.S. at 678.  "[A] plaintiff's obligation to provide the 'grounds' of his

11   'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of

12   the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

13   555 (2007).

14       Further, the "[f]actual allegations must be enough to raise a right to relief above the

15   speculative level on the assumption that all of the complaint's allegations are true."  *Twombly*,

16   550 U.S. at 545, 555.  According to the Court in *Iqbal*, "the tenet that a court must accept as true

17   all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Iqbal*, 556

18   U.S. at 678.  Thus, "[t]hreadbare  recitals of the elements of a cause of action, supported by mere

19   conclusory  statements, do not suffice."  *Id.*; *see also Sherman v. Network Commerce, Inc.*, No.

20   06-35575, 2009 WL 3017297, at *1 (9th Cir. Sept. 22, 2009); *Dunn v. White*, 880 F.2d 1188,

21   1197 (10th Cir. 1989) (conclusory allegations without supporting factual averments are

22   insufficient to state a claim on which relief can be based).  "This requirement of plausibility

23   serves not only to weed out claims that do not (in the absence of additional allegations) have a

24   reasonable prospect of success, but also to inform the defendants of the actual grounds of the

25   claim against them."  *Robbins v. Okla.*, 519 F.3d 1242, 1248 (10th Cir. 2008).

26       **Plaintiff contends** that this is not a true affirmative defense and should, therefore, be

27   stricken.

28

**[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER**

<u>Third Affirmative Defense: Plaintiff Did Not Engage in Protected Activity Under 18 U.S.C. Section 1514A</u>

For a plaintiff to prove that she engaged in protected activity under SOX, she must establish both: "(1) a subjective belief that the conduct being reported violated a listed law, and (2) this belief must be objectively reasonable." *Van Asdale*, 577 F.3d at 1000 (emphasis added).

The "objectively reasonable" test uses "the normal reasonable person standard used and interpreted in a wide variety of legal contexts," i.e., the behavior is evaluated based upon the knowledge of a reasonable person with the same training and experience. *Id*. at 1000-01. Further, "to have an objectively reasonable belief there has been shareholder fraud, the complaining employee's theory of such fraud must at least approximate the basic elements of a claim for securities fraud." *Id*. at 1001.

**The Parties do not agree on the following:**

**Defendant contends** that the Ninth Circuit has held that "in order to prove securities fraud, a plaintiff must demonstrate '(1) a material misrepresentation or omission of fact, (2) scienter, (3) a connection with the purchase or sale of a security, (4) transaction and loss causation, and (5) economic loss.'" *Van Asdale*, 577 F.3d at 1001 (quoting *In re Daou Sys., Inc.*, 411 F.3d 1006, 1014 (9th Cir. 2005).

**Plaintiff disagrees** that she is required to effectively prove securities fraud in order to prevail on her whistleblower retaliation claim under SOX.

**Additionally, Plaintiff contends** that this is not a true affirmative defense but, rather, just a rehashing of the elements of Plaintiff's *prima facie* case and should, therefore, be stricken.

<u>Fifth Affirmative Defense: Statute of Limitations</u>

Claims brought pursuant to Labor Code Section 1102.5 for alleged retaliation are subject to a one-year statute of limitations period. *Tapia v. Hyatt Corporation*, No. 8:20-cv-02346-DOC-JDEx, 2021 WL 3706650, *5 (C.D. Cal. June 30, 2021); *Butler v. Prime Healthcare Centinela, LLC*, No. CV 19-1738 PA (SSX), 2019 WL 3207818, **3–4 (C.D. Cal. May 10, 2019) ("The one-year statute of limitations for an action upon a statute for a penalty therefore applies, even though Plaintiff does not expressly seek the Labor Code section 1102.5(f) civil

13-

penalty.... Plaintiff was terminated on June 15, 2017 but did not file her complaint until January 30, 2019, well beyond the one-year statutory period. Because the running of the statute of limitations is apparent on the face of the SAC, dismissal of Plaintiff's second cause of action is appropriate"); *Feast-Williams v. Merrill Lynch Fenner Pierce & Smith Inc.*, No. CV1806451SJOSSX, 2018 WL 9517023 (C.D. Cal. Dec. 18, 2018) ("Plaintiff argues that because she seeks damages and not civil penalties, a three-year statute of limitations should apply… However, as established, the mandatory civil penalty for violation of section 1102.5 ensures that a one-year statute of limitations applies to Section 1102.5 claims.  Plaintiff's Section 1102.5 claim is time-barred."); *but see Ayala v. Frito Lay, Inc.*, 263 F. Supp. 3d 891 (E.D. Cal. 2017) (finding that "actions commenced under § 1102.5 must be brought within three years" unless "the suit seeks the civil penalty" (quoting *Minor v. Fedex Office & Print Services, Inc.*, 182 F. Supp. 3d 966 (N.D. Cal. 2016))

<u>Sixth Affirmative Defense: After Acquired Evidence</u>

- That Plaintiff engaged in misconduct;

- That Plaintiff's alleged misconduct is sufficiently severe that Defendant would have terminated her employment because of that conduct alone, had Defendant known of it; and

- That Defendant would have terminated Plaintiff's employment for her alleged misconduct as a matter of settled company policy.

*See* CACI 2506 ("Limitation on Remedies - After-Acquired Evidence").

**The Parties do not agree on the following**:

**Defendant contends** that where Plaintiff actively concealed the after-acquired evidence, backpay should be cut off at the point the concealed misconduct took place, not at later discovery.  Moreover, where the misconduct was committed by a corporate officer or other high-ranking individual with a fiduciary duty to the employer, any backpay should be cut off when the breach of fiduciary duty occurred, whether concealed or not.  *See* Hon. Gerald E. Rosen et al., Rutter Group Practice Guide: Federal Employment Litigation ¶ 11:478 (2022).

**Plaintiff disagrees** that backpay may be limited to the point at which the alleged misconduct / breach of fiduciary duty occurred. There is no authority for this, and the section of

14-

the Rutter Guide cited by Defendant is merely a "comment" suggesting that an employer might ask for this. However, the U.S. Supreme Court's decision in *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 361 (1995) is clear: backpay may be limited only after the date the alleged wrongdoing was discovered.

Eighth Affirmative Defense: Failure to Mitigate Damages

- That employment substantially similar to Plaintiff's former job was available to her;

- That Plaintiff failed to make reasonable efforts to seek this employment; and

- The amount that Plaintiff could have earned from this employment.

In deciding whether the employment was substantially similar, jurors should consider, among other factors, whether: (a) the nature of the work was different from Plaintiff's employment with Defendant; (b) the new position was substantially inferior to Plaintiff's former position; (c) the salary, benefits, and hours of the job were similar to Plaintiff's former job; (d) the new position required similar skills, background, and experience; (e) the job responsibilities were similar; and (f) the job was in the same locality.

*See* CACI 3963 ("Affirmative Defense – Employee's Duty to Mitigate Damages").

**The Parties do not agree on the following:**

**Plaintiff Contends that**, in deciding whether Plaintiff failed to make reasonable efforts to retain comparable employment, jurors should consider whether Plaintiff quit or was discharged from that employment for a reason within her control. This language is pulled directly from CACI 3963.

**Defendant disagrees** that this language should be included.

Tenth Affirmative Defense: Punitive Damages Violate Procedural and Substantive Due Process

Plaintiff's seeking of punitive damages violates Defendant's rights to protection from "excessive fines" as provided in the Eighth Amendment of the United States Constitution and in Article I, Section 17 of the Constitution of the State of California, and Defendant's rights to

**[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER**

procedural due process under the Fourteenth Amendment to the United States Constitution and under the California Constitution.

**Plaintiff contends** that this is not a true affirmative defense and should, therefore, be stricken.

Eleventh Affirmative Defense: Facts Alleged Insufficient to Support Claim for Punitive Damages

To recover punitive damages, Plaintiff must show, by clear and convincing evidence, that Defendant engaged in oppression, fraud or malice.  Cal. Civ. Code § 3294(a).

**The Parties do not agree on the following**:

**Defendant contends** that in making this showing, Plaintiff has the onerous burden to show with clear and convincing evidence that Defendant's actions "evidence[d] an evil motive or a conscious and deliberate disregard" for her protected rights.  *Ngo v. Reno Hilton Resort Corp*., 140 F.3d 1299, 1304 (9th Cir. 1998); *see also Taylor v. Superior Ct*., 24 Cal.3d 890, 894-95 (1979) (plaintiff must show defendant's conduct was motived by "spite or…fraudulent or evil motive.").  Notably, even if a defendant's actions are "unfounded, misguided and extremely ill-advised," the defendant is not liable for punitive damages under California law unless the alleged conduct is "deliberate, egregious, or malicious."  *Ackerman v. Western Electric Co*., 643 F. Supp. 836, 857 (N.D. Cal. 1986).

**Plaintiff disagrees** that the authorities cited support these statements regarding malice.

**Additionally, Plaintiff contends** that this is not a true affirmative defense but, rather, just a rehashing of the elements of Plaintiff's *prima facie* case and should, therefore, be stricken.

Fourteenth Affirmative Defenses: Legitimate, Non-Retaliatory Reason

Defendant's decisions in this case were at all times based on legitimate business reasons and not any retaliatory motives.

**Plaintiff contends** that this is not a true affirmative defense but, rather, just a rehashing of the elements of Plaintiff's prima facie case and should, therefore, be stricken.

Fifteenth Affirmative Defense: Legitimate Reasons

**[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER**

Defendant's decisions in this case were at all times based on legitimate business reasons and not on any retaliatory motives. Defendant would have terminated Plaintiff employment for legitimate, independent reasons.

**Plaintiff contends** that this is not a true affirmative defense but, rather, just a rehashing of the elements of Plaintiff's prima facie case and should, therefore, be stricken.

   f.  In brief, the key evidence Defendant relies on for each counterclaim and affirmative defense is:

First Affirmative Defense: Failure to State a Claim

*Category 1: Insider Trading with Joshua Berkowitz*

- Documentary evidence that Dr. Murphy did not provide insider information to Berkowitz, in addition to the non-disclosure agreement.
- Testimony from Cunning that she did not know whether Berkowitz had sold shares, or how many shares he had with Skye.
- Testimony from Cunning that she does not know if Berkowitz had any other individuals who invested in Skye with him.
- Testimony from Cunning that she did not complain to anyone but Dr. Murphy.
- Testimony and documentary evidence reflecting that Dr. Murphy denies that Cunning ever made any complaints to him.

*Category 2: Shareholder Fraud Concerning Skye's Licenses with UM*

- Testimony from Cunning that she was unaware of an agreement in place with Teewinot and Skye.
- Testimony from Cunning that she believed that the release of the license was the best course of action for Skye at the time.
- Testimony from Dr. Murphy about his relationship with Teewinot.
- Documentary evidence about Skye's agreement with Teewinot.
- Testimony from Cunning that she did not complain to anyone but Dr. Murphy.
- Testimony and documentary evidence reflecting that Dr. Murphy denies that Cunning

17-

ever made any complaints to him.

*Category 3: Misleading Investors/Shareholders with Skye's Press Release on the Glauconix Study*

- Documentary evidence about Skye and Glauconix's almost identical respective press releases.

- Documentary evidence consisting of multiple emails regarding the Glauconix data, study, and the results.

- Documentary evidence that Cunning never expressed opposition to Glauconix's press release.

- Documentary evidence of Skye's stock price after the press release.

- Testimony from Cunning that she believed a statistical determination was needed to issue a press release.

- Testimony from Cunning that she did not complain to anyone but Dr. Murphy.

- Testimony and documentary evidence reflecting that Dr. Murphy denies that Cunning ever made any complaints to him.

- Testimony from Dr. Feryan Ahmed of Glauconix that Skye's press release about the Glauconix study was not misleading.

*Category 4: Attempting To Foist Blame on Cunning For The Glauconix Abstract to Mislead Investors/Shareholders*

- Documentary evidence that Cunning never expressed opposition to the content of the abstract.

- Documentary evidence that Cunning took credit for contributing to publication of the abstract.

- Documentary evidence that Dr. Torrejon of Glauconix believed that Cunning contributed to the abstract.

- Documentary evidence that Dr. Torrejon and Dr. Murphy volunteered themselves as authors for the abstract.

-18-

**[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER**

- Testimony from Cunning that she did not complain to anyone about the abstract.
- Testimony and documentary evidence reflecting that Dr. Murphy denies that Cunning ever made any complaints to him.

*Category 5: Misleading Investors/Shareholders With The NASH and Endometriosis Market Projections*

- Documentary evidence that market projections varied in range for endometriosis and NASH.
- Testimony from Cunning that she only relied on one resource, Decision Resources Group.
- Testimony from Dr. Murphy that he included projections from multiple sources.
- Testimony from board member Punit Dhillon that he did not place any certainty on any of the market projection numbers for NASH and endometriosis.
- Documentary evidence that Cunning did not complain to Doug Cesario but rather sent him the PowerPoint slides without complaint.
- Testimony from Doug Cesario that he did not consider Cunning's email a complaint.
- Testimony and documentary evidence reflecting that Dr. Murphy denies that Cunning ever made any complaints to him.

Third Affirmative Defense: Cunning Did Not Engage in Protected Activity Under 18 U.S.C. Section 1514A

*Category 1: Insider Trading with Joshua Berkowitz*

- Documentary evidence that Dr. Murphy did not provide insider information to Berkowitz, in addition to the non-disclosure agreement.
- Testimony from Cunning that she did not know whether Berkowitz had sold shares, or how many shares he had with Skye.
- Testimony from Cunning that she does not know if Berkowitz had any other individuals who invested in Skye with him.
- Testimony from Cunning that she did not complain to anyone but Dr. Murphy.

19-

**[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER**

- Testimony and documentary evidence reflecting that Dr. Murphy denies that Cunning ever made any complaints to him.

*Category 2: Shareholder Fraud Concerning Skye's Licenses with UM*

- Testimony from Cunning that she was unaware of an agreement in place with Teewinot and Skye.

- Testimony from Cunning that she believed that the release of the license was the best course of action for Skye at the time.

- Testimony from Dr. Murphy about his relationship with Teewinot.

- Documentary evidence about Skye's agreement with Teewinot.

- Testimony from Cunning that she did not complain to anyone but Dr. Murphy.

- Testimony and documentary evidence reflecting that Dr. Murphy denies that Cunning ever made any complaints to him.

*Category 3: Misleading Investors/Shareholders with Skye's Press Release on the Glauconix Study*

- Documentary evidence about Skye and Glauconix's almost identical respective press releases

- Documentary evidence consisting of multiple emails regarding the Glauconix data, study, and the results.

- Documentary evidence that Cunning never expressed opposition to Glauconix's press release.

- Documentary evidence of Skye's stock price after the press release.

- Testimony from Cunning that she believed a statistical determination was needed to issue a press release, plus no statement of statistical significance made in the press release.

- Testimony from Cunning that she did not complain to anyone but Dr. Murphy.

- Testimony and documentary evidence reflecting that Dr. Murphy denies that Cunning ever made any complaints to him.

- Testimony from Dr. Ahmed of Glauconix that Skye's press release about the Glauconix study was not misleading.

20-

**[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER**

*Category 4: Attempting To Foist Blame on Cunning For The Glauconix Abstract to Mislead Investors/Shareholders*

- Documentary evidence that Cunning never expressed opposition to the content of the abstract
- Documentary evidence that Cunning took credit for contributing to publication of the abstract
- Documentary evidence that Dr. Torrejon of Glauconix believed that Cunning contributed to the abstract
- Documentary evidence that Dr. Torrejon and Dr. Murphy volunteered themselves as authors for the abstract.
- Testimony from Cunning that she did not complain to anyone about the abstract.
- Testimony and documentary evidence reflecting that Dr. Murphy denies that Cunning ever made any complaints to him.

*Category 5: Misleading Investors/Shareholders With The NASH and Endometriosis Market Projections*

- Documentary evidence that market projections varied in range for endometriosis and NASH.
- Testimony from Cunning that she only relied on one resource, Decision Resources Group.
- Testimony from Dr. Murphy that he included projections from multiple sources
- Testimony from board member Punit Dhillon that he did not place any certainty on any of the market projection numbers for NASH and endometriosis.
- Documentary evidence that Cunning did not complain to Doug Cesario but rather sent him the PowerPoint slides without complaint.
- Testimony from Doug Cesario that he did not consider Cunning's email a complaint. Testimony and documentary evidence reflecting that Dr. Murphy denies that Cunning ever made any complaints to him

Fifth Affirmative Defense: Statute of Limitations

-21-

**[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER**

- Cunning contends in her FAC and the undisputed evidence shows that her employment was terminated in July 18, 2019, almost two years prior to filing her retaliation claim.

- Cunning filed her Complaint on April 16, 2021.

Sixth Affirmative Defense: After Acquired Evidence

- Documentary evidence reflecting that Cunning signed an executive employment agreement on September 28, 2018, which included a section related to return of company property:

**Return of Property**.  Executive agrees that all property (including without limitation all equipment, tangible proprietary information, documents, records, notes, contracts and computer-generated materials) furnished to or created or prepared by Executive related to Executive's employment belongs to the Company and shall be promptly returned to the Company upon termination of Executive's employment.  (*Id*.)

- Testimony that on December 2, 2021, Skye discovered during Cunning's deposition that she made copies all of the files on her company issued laptop on an external hard drive, which included Skye's confidential information, and that external hard drive is still in her possession today.

- Documentary evidence and testimony from Cunning that she presently works in the same field at Medical Knowledge Group, a company that addresses the business needs of biopharmaceutical companies through analytics and marketing solutions.

Eighth Affirmative Defense: Failure to Mitigate Damages

- Testimony and documentary evidence that Cunning delayed in seeking new employment.

Tenth Affirmative Defense: Punitive Damages Violate Procedural and Substantive Due Process

22-

**[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER**

- Cunning was terminated due to Skye's reorganization and move towards clinical development.
- Neither Dr. Murphy, nor Skye engaged in any illegal activity

Eleventh Affirmative Defense: Facts Alleged Insufficient to Support Claim for Punitive Damages

- Cunning was terminated due to Skye's reorganization and move towards clinical development.
- Neither Dr. Murphy, nor Skye engaged in any illegal activity

Fourteenth Affirmative Defenses: Legitimate, Non-Retaliatory Reason

- The documentary evidence and testimony reflects that Cunning was terminated due to Skye's reorganization and move towards clinical development.
- The documentary evidence and testimony reflects that Skye hired employees for clinical operations positions shortly after Cunning's termination, including Dennis Kim and Alice Chen.
- The documentary evidence and testimony reflects that Skye's limited resources, as a three person company, were used in developing clinical operations.

Fifteenth Affirmative Defense: Legitimate Reasons

- The documentary evidence and testimony reflects that Cunning was terminated due to Skye's reorganization and move towards clinical development.
- The documentary evidence and testimony reflects that Skye hired employees for clinical operations positions shortly after Cunning's termination, including Dennis Kim and Alice Chen.
- The documentary evidence and testimony reflects that Skye's limited resources, as a three person company, were used in developing clinical operations.
- The testimony reflects that a vice president of business operations position was no longer needed.
- The testimony reflects that Skye still has not reinstated the vice president of business operations position.

23-

**[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER**

8. Remaining Triable Issues. In view of the admitted facts and the elements required to establish the claims, counterclaims and affirmative defenses, the following issues remain to be tried:

    a.   Whether Plaintiff engaged in any protected activity;

    b.   Whether Plaintiff reasonably believed that any of the conduct about which she complained or resisted (i.e. her protected activity) constituted a possible legal violation(s) by Defendant or its employees;

    c.   Whether Defendant knew or was aware of Plaintiff's protected activity;

    d.   Whether any protected activity by Plaintiff was a contributing factor in Defendant's decision to terminate her employment;

    e.   Whether Defendant would have terminated Plaintiff in the absence of Plaintiff's protected activity (SOX claim);

    f.   Whether the termination would have occurred for legitimate, independent reasons even if Plaintiff had not engaged in protected activities (1102.5 claim)

    g.   Whether any Officer, Director, or Managing Agent of Defendant engaged in or ratified conduct constituting malice, fraud, or oppression against Plaintiff;

    h.   Whether Plaintiff is entitled to recover damages and the amount, if any.

    i.   Whether punitive damages should be awarded and the amount, if any.

    j.   Whether Plaintiff properly mitigated her economic damages;

    k.   Whether Plaintiff's economic damages should be limited by "after-acquired evidence" of her alleged wrongdoing.

9. All discovery is complete, with the following exceptions:

    a.   The parties are meeting and conferring regarding Plaintiff's request that Defendant produce at trial documents that evidence, refer, or relate to its financial condition and/or wealth for purposes of establishing punitive damages amounts.

10. All disclosures under Federal Rule of Civil Procedure 26(a)(3) have been made.

**[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER**

The joint exhibit list of the parties has been filed under separate cover as required by L.R. 16-6.1. Unless all parties agree that an exhibit shall be withdrawn, all exhibits will be admitted without objection at trial, except those exhibits listed below:

Plaintiff objects to Exhibit Nos.

- 122 – FRE 602, 802 901
- 123 – FRE 602, 802 901
- 134 – FRE  602, 802 901

Defendant objects to Exhibit Nos.:

- 58: Irrelevant; Hearsay; FRE 403, 602, 901
- 81: Irrelevant; FRE 403
- 84: Irrelevant: FRE 403
- 85: Irrelevant; Hearsay; FRE 403, 602, 901
- 86: Irrelevant; Hearsay; FRE 403, 602, 901
- 87: Irrelevant; FRE 403
- 90: Irrelevant; FRE 403
- 91: Irrelevant; FRE 403
- 92: Irrelevant; FRE 403
- 94: Irrelevant; Hearsay; FRE 403, 602, 901
- 95: Irrelevant; FRE 403
- 200: Irrelevant; FRE 403
- 201: Irrelevant, FRE 403
- 205: Irrelevant; Hearsay; FRE 403, 602, 901
- 206: Irrelevant; Hearsay; FRE 403, 602, 901
- 217: Irrelevant; Hearsay; FRE 403, 602, 901
- 218: Irrelevant; Hearsay; FRE 403, 602, 901
- 219: Irrelevant; Hearsay; FRE 403, 602, 901
- 220: Irrelevant; Hearsay; FRE 403, 602, 901

**[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER**

- 221: Irrelevant; Hearsay; FRE 403, 602, 901

11. Witness lists of the parties have been filed with the Court subject to a supplemental designation as discussed above.

Each party intending to present evidence by way of deposition testimony has marked such depositions in accordance with L.R. 16-2.7. For this purpose, the following depositions shall be lodged with the Clerk as required by L.R. 32-1:

        a.  Avtar Dhillon

        b.  Jim Heppell

        c.  Feryan Ahmed

        d.  Dr. Brian Murphy

Avtar Dhillon. Plaintiff contends that, in deposition, in May 2022, Mr. Dhillon asserted his 5th Amendment right against self-incrimination in response to each and every question asked of him, including all questions relating to Plaintiff's claims and Defendant's affirmative defenses. The Court ordered Mr. Dhillon to appear for deposition at the courthouse on December 20, where he again asserted the 5th Amendment and indicated he would continue to do so at trial. Pursuant to applicable case law, Mr. Dhillon should not be permitted to testify inconsistently with the assertion of that privilege at trial and provide a substantive response, as this would present an unfair surprise since Plaintiff was previously prevented from cross-examining him twice.

12.    The following law and motion matters and motions *in limine*, and no others, are pending or contemplated:

5.    <u>Plaintiff's Motions *in Limine*</u>

a.    Plaintiff seeks, pursuant to Federal Rules of Evidence 401, 402, and 403, to exclude all argument and evidence supporting Defendant's after-acquired evidence defense from presentation to the jury. Specifically, Plaintiff seeks to exclude all testimony and documents, including but not limited to emails and attachments thereto, that evidence, refer, or relate to her alleged appropriation and retention of Defendant's confidential and proprietary data. Plaintiff contends that such evidence should be presented only to the Court for determination of

**[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER**

whether the defense operates to limit Plaintiff's damages. Additionally, Plaintiff has asked for bifurcation of liability and damages (see Section 13, below). Thus, even if the Court declines to rule on this issue, Plaintiff seeks to exclude this argument and evidence during the first (liability) phase of trial. To be clear, Plaintiff does not seek to exclude such evidence altogether, just from the jury and/or during the first phase of trial, as Plaintiff contends such evidence is relevant only to Defendant's argument that Plaintiff's recoverable damages should be limited and this should be tried by the Court.

        b.     Plaintiff seeks, pursuant to Federal Rules of Evidence 401, 402, 403 and 1001-1008, to exclude evidence that the press release issued by Defendant on March 12, 2019, was based on studies by UM or other studies by Glauconix that have not been produced in discovery.

        c.     Plaintiff seeks, pursuant to Federal Rule of Evidence 403, to exclude from evidence – including for rebuttal or impeachment – all documents that have been requested but not produced by Defendant.

        d.     Plaintiff seeks to prevent witness Avtar Dhillon from testifying in court about any substantive matter in this action, including each and every element of Plaintiff's claims and Defendant's affirmative defenses.

        6.     <u>Defendant's Motions *in Limine*</u>

        e.     Motion *in Limine* No. 1 to exclude any reference or allegations to Dr. Murphy referring to Plaintiff as a "woman of ill repute." This is highly prejudicial, irrelevant to the action, and will confuse the Court. Fed. R. Evid. 401, 402, and 403

        f.     Motion *in Limine* No. 2 to exclude reference to SEC charges against Avtar Dhillon and the arrest of Avtar Dhillon. This is highly prejudicial, irrelevant to the action, and will confuse the Court. Fed. R. Evid. 401, 402, and 403.

        g.     Motion *in Limine* No. 3 "rewarding" Avtar Dhillon by giving him 1,650,000 additional shares of its stock and extending the vesting period. This is highly prejudicial, irrelevant to the action, and will confuse the Court. Fed. R. Evid. 401, 402, and 403.

**[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER**

h.     Motion *in Limine* No. 5[5] to exclude any reference to the Dhillons involvement with the mafia, or Jim Heppell's ties to Russia. This is highly prejudicial, irrelevant to the action, and will confuse the Court. Fed. R. Evid. 401, 402, and 403. Such testimony or evidence would also be inadmissible hearsay in violation of Rule 802. Fed. R. Evid. 802.

i.     Motion *in Limine* No. 6 to exclude reference to the Citron Report and Punit Dhillon being "forced to resign as CEO of OncoSec in disgrace." This is highly prejudicial, irrelevant to the action, and will confuse the Court. Fed. R. Evid. 401, 402, and 403. Such testimony or evidence would also be inadmissible hearsay in violation of Rule 802. Fed. R. Evid. 802.

j.     Motion *in Limine* No. 7 to exclude reasons for Dr. Murphy's termination or settlement Dr. Murphy reached with Defendant. This is highly prejudicial, irrelevant to the action, and will confuse the Court. Fed. R. Evid. 401, 402, and 403.

k.     Motion *in Limine* No. 9[6] to exclude reference, evidence, or testimony related to the Arrangement Agreement between Defendant and Emerald Health Therapeutics. This is highly prejudicial, irrelevant to the action, and will confuse the Court. Fed. R. Evid. 401, 402, and 403.

l.     Motion *in Limine* No. 10 to exclude argument by Plaintiff based on Defendant's OSHA response letter that Defendant shifted its reasons for the termination of Plaintiff.  This is highly prejudicial and will confuse the Court.

7.     <u>Motions *in Limine* in Agreement</u>

After meeting and conferring, the Parties have stipulated to the following evidentiary matters:

a.     In accordance with Federal Rule of Evidence 408, the parties and their counsel shall not introduce evidence of, argue, or refer to any statements made in furtherance of

---

[5] The contemplated Motion in Limine No. 4 will not be filed by Skye due to the Parties' agreement on the subject of the motion.

[6] The contemplated Motion in Limine No. 8 will not be filed by Skye due to the Parties' agreement on the subject of the motion.

28-

**[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER**

offers to compromise and/or negotiations thereof, including but not limited to statements of settlement demands made by Plaintiff in Defendant's letter to OSHA dated March 6, 2020. To the extent any such statements are in documents to be admitted into evidence, such statements shall be redacted.

              b.      Plaintiff and her counsel shall not mention in the presence of the jury (in opening statement, closing argument or otherwise) or introduce testimony (either testimonial or documentary) regarding the size of the law firm representing Defendant.

              c.      Plaintiff and her counsel shall not mention in the presence of the jury (in opening statement, closing argument or otherwise) or introduce testimony (either testimonial or documentary) regarding the severance agreement between Cesario and Defendant.

              d.      Defendant and its counsel shall not mention in the presence of the jury (in opening statement, closing argument or otherwise) or introduce testimony (either testimonial or documentary) regarding any legal claims, or the factual support for such claims, that Plaintiff has asserted against any other employer prior to her employment with Defendant.

              e.      Defendant will not claim or assert that it made a determination whether Avtar Dhillon engaged in any criminal wrongdoing.

              f.      Defendant will not claim that the investigation by the Greenberg Traurig firm into Cunning's 2019 demand letter made a determination that Plaintiff's claims had no merit. Plaintiff will not claim that Defendant failed to investigate her claims of wrongdoing.

     13. Bifurcation of the following issues for trial is ordered:

              a.      Elements of both claims brought by Plaintiff shall be tried in the first phase except Plaintiff requests that elements related to harm and/or damage Plaintiff suffered and any defenses thereto not be tried during this phase and that no evidence related to such be presented during this phase.

              b.      Plaintiff requests that all alleged damages and defenses thereto be tried separately in a second phase, and only after the Court (not the jury) determines whether Defendant's "after-acquired evidence" defense will operate to limit Plaintiff's recoverable damages.

**[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER**

1          c.     Defendant requests only that punitive damages recoverable by Plaintiff be

2  bifurcated and tried in a second phase.

3      14.    The foregoing admissions having been made by the parties, and the parties having

4  specified the foregoing issues remaining to be litigated, this Final Pretrial Conference Order shall

5  supersede the pleadings and govern the course of the trial of this cause, unless modified to

6  prevent manifest injustice.

7

8      IT IS SO ORDERED.

9

10  DATED:  _____

11                               HONORABLE DAVID O. CARTER
                                    UNITED STATES DISTRICT COURT JUDGE

12  Approved as to form and content:

13

14  DATED: December 30, 2022     ALTUS LAW FIRM

15

16

17                         By:  /s/  Sean T. Nguyen
                                 Andrew J. Jaramillo

18                                 Sean T. Nguyen

19                        Attorneys for Plaintiff
                        WENDY CUNNING

20

21  DATED: December 30, 2022     OGLETREE, DEAKINS, NASH, SMOAK
                        & STEWART, P.C.

22

23

24                         By:  /s/  Ryan H. Crosner
                                 Ryan H. Crosner

25                                 Chloe S. Chang

26                        Attorneys for Defendants
                        SKYE BIOSCIENCE, INC. and EMERALD

27                        HEALTH SCIENCES, INC.

28

**[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER**