FILED
CLERK, U.S. DISTRICT COURT

1/18/23

CENTRAL DISTRICT OF CALIFORNIA
BY:   D. Lewman   DEPUTY

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

WENDY CUNNING,

          Plaintiff(s),

v

SKYE BIOSCIENCE, INC.,

          Defendant(s)

CASE NO. SA CV 21-00710-DOC (KESx)

**JURY INSTRUCTIONS**

## JURY INSTRUCTION __1__
## DUTY OF JURY (END OF CASE)

Members of the Jury: Now that you have heard all of the evidence and arguments of the attorneys, it is my duty to instruct you on the law that applies to this case.

A copy of these instructions will be sent to the jury room for you to consult during your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions, or anything I may say or do, that I have an opinion regarding the evidence or what your verdict should be.

JURY INSTRUCTION  2

CLAIMS AND DEFENSES

To help you follow the evidence, I will give you a brief summary of the
positions of the parties. Ms. Cunning brings two claims for relief against Skye.
Both arise from Ms. Cunning's termination of employment with Skye, which she
claims violated two separate laws.

1.  In the first claim, Ms. Cunning alleges Skye retaliated against her in
    violation of the federal Sarbanes-Oxley Act, which we will refer to as
    "SOX."

2.  In the second claim, Ms. Cunning alleges Skye retaliated against her in
    violation of the California Whistleblower Protection Act, Labor Code
    §1102.5, which we will refer to as the "WPA."

Ms. Cunning has the burden of proving these claims.

Skye denies those claims and also contends that the affirmative defenses
it has asserted in this case bar Ms. Cunning's claims. Skye has the burden of proof
on these affirmative defenses.

## JURY INSTRUCTION  *3*

## BURDEN OF PROOF- PREPONDERANCE OF THE EVIDENCE

When a party has the burden of proving any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

JURY INSTRUCTION _4_

## BURDEN OF PROOF- CLEAR AND CONVINCING EVIDENCE

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means that the party must present evidence that leaves you with a firm belief or conviction that it is highly probable that the factual contentions of the claim or defense are true. This is a higher standard of proof than proof by a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.

JURY INSTRUCTION 5

WHAT IS EVIDENCE

The evidence you are to consider in deciding what the facts are consists of:

1. the sworn testimony of any witness;

2. the exhibits that are admitted into evidence;

3. any facts to which the lawyers have agreed; and

4. any facts that I have instructed you to accept as proved.

# JURY INSTRUCTION ___6___

## EVIDENCE FOR LIMITED PURPOSE

Some evidence may be admitted for a limited purpose only.

When I instruct you that an item of evidence has been admitted for a limited purpose, you must consider it only for that limited purpose and not for any other purpose.

## JURY INSTRUCTION __7__
## DIRECT AND CIRCUMSTANTIAL EVIDENCE

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

JURY INSTRUCTION _8_

RULING ON OBJECTIONS

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore that evidence. That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

JURY INSTRUCTION __9__

## CREDIBILITY OF WITNESSES

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1)     the opportunity and ability of the witness to see or hear or know the   things testified to;

(2)     the witness's memory;

(3)     the witness's manner while testifying;

(4)     the witness's interest in the outcome of the case, if any;

(5)     the witness's bias or prejudice, if any;

(6)     whether other evidence contradicted the witness's testimony;

(7)     the reasonableness of the witness's testimony in light of all the evidence; and

(8)     any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened.  People often forget things or make mistakes in what they remember.  Also, two people may see the same event but remember it differently.  You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

JURY INSTRUCTION _10_

STIPULATIONS OF FACT

The parties have agreed that the following facts are established and do not require any proof at trial:

- On November 3, 2014, Skye changed its name to "Nemus Bioscience, Inc."

- Effective March 25, 2019, Skye changed its named to "Emerald Bioscience, Inc." or "EMBI"

- Effective January 19, 2021, Skye changed its name to "Skye Bioscience, Inc."

- At trial, any reference to "Nemus Bioscience, Inc." or "Emerald Bioscience, Inc." refers to Skye, which are one and the same for purposes of this lawsuit.

- On April 20, 2016, Skye entered into an Independent Consultant Agreement with Ms. Cunning to provide consulting services.

- On March 1, 2018, Ms. Cunning became employed by Skye in the position of Vice President of Business Operations.

- On September 28, 2018, Ms. Cunning signed an Executive Employment Agreement with Skye.

- Ms. Cunning's employment with Skye was terminated on July 18, 2019.

- Ms. Cunning filed an administrative claim of whistleblower retaliation under SOX with the federal Occupational Safety and Health Administration ("OSHA") on January 3, 2020.

- Skye is and was, at all times relevant to Ms. Cunning's claims, a publicly traded company.

- Jim Heppell was deposed as a witness on behalf of Emerald Health Sciences, Inc. ("EHS"). In that capacity, he served as the person most knowledgeable on a number of topics related to this lawsuit for EHS.

- Dr. Feryan Ahmed was deposed as a witness on behalf of Glauconix Biosciences, Inc. ("Glauconix"). In that capacity, he served as the person most knowledgeable on a number of topics related to this lawsuit for Glauconix.

## JURY INSTRUCTION __11__
### DEPOSITION IN LIEU OF LIVE TESTIMONY

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded. When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.

The deposition of Jim Heppell was taken on June 3, 2022. The deposition of Dr. Feryan Ahmed was taken on June 27, 2022. The deposition of Dr. Brian Murphy was taken on December 3, 2021 and May 25, 2022. Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

JURY INSTRUCTION __12__

TRANSCRIPT OF RECORDING IN ENGLISH

If you watch a recording that has been received in evidence, please listen to it very carefully. Each of you has been given a transcript of the recording to help you identify speakers and as a guide to help you listen to the recording. However, bear in mind that the recording is the evidence, not the transcript. If you hear something different from what appears in the transcript, what you heard is controlling. After the recording has been played, the transcript will be taken from you.

JURY INSTRUCTION _13_

IMPEACHMENT EVIDENCE—WITNESS

The evidence that a witness has been convicted of a crime, lied under oath on a prior occasion, or testified inconsistently with their prior deposition testimony may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose.

## JURY INSTRUCTION _14_

## USE OF INTERROGATORIES

Evidence was presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side. These answers were given in writing and under oath, before the trial, in response to questions that were submitted under established court procedures. You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand.

## JURY INSTRUCTION _15_

## AGENT AND PRINCIPAL—DEFINITION

An agent is a person who performs services for another person under an express or implied agreement and who is subject to the other's control or right to control the manner and means of performing the services. The other person is called a principal. The agency agreement may be oral or written.

JURY INSTRUCTION __16__

## AGENT—SCOPE OF AUTHORITY DEFINED

An agent is acting within the scope of authority if the agent is engaged in the performance of duties which were expressly or impliedly assigned to the agent by the principal.

JURY INSTRUCTION __17__

Whistleblower Protection – Elements of Claim (Sarbanes-Oxley Claim ("SOX"))

To prove her claim for retaliation in violation of SOX, Ms. Cunning must prove the following elements by a preponderance of the evidence:

1.  That Skye was Ms. Cunning's employer;

2.  That Ms. Cunning engaged in "protected activity," as defined in these instructions;

3.  That Skye knew or suspected, actively or constructively, that Ms. Cunning engaged in the protected activity;

4.  That Ms. Cunning's employment was terminated;

5.  That the circumstances were sufficient to raise an inference that Ms. Cunning's protected activity was a contributing factor (i.e. any factor, which alone or in combination with other factors, tends to affect in any way the outcome of the decision) in Defendant's decision to terminate her employment; and

6.  That Ms. Cunning was harmed by the termination of her employment.

JURY INSTRUCTION __18__

Whistleblower Protection – Protected Activity (SOX Claim)

To prove she engaged in protected activity under SOX, Ms. Cunning must prove, by a preponderance of the evidence, that she provided:

(1) to a person who has the authority to investigate, discover, or terminate the misconduct;

(2) information regarding conduct that she reasonably believed constituted a violation of a rule or regulation of the U.S. Securities and Exchange Commission, or any provision of federal law relating to fraud against shareholders.

The SEC rules or regulations and other provisions of federal law relating to fraud against shareholders which Ms. Cunning claims she reasonably believed Skye violated are as follows:

- 18 U.S.C. 1348, which makes it illegal to knowingly execute or attempt to execute a scheme to defraud any person in connection with a security of a publicly-traded company; and

- SEC Rule 10b-5, which makes it illegal for any person to defraud or deceive someone, including through the misrepresentation of material information, with respect to the sale or purchase of a security; and

- SEC Rule 10b-5 also prohibits "insider trading" by corporate officers and directors or other insider employees. Such individuals may not use nonpublic corporate information to gain a profit or avoid a loss by trading in the Company's stock. This rule also prohibits "tipping" of nonpublic corporate information to third parties.

JURY INSTRUCTION _19_

Reasonable Belief (SOX Claim)

For Ms. Cunning's SOX claim, when determining whether Ms. Cunning had a reasonable belief that Skye violated a rule or regulation of the U.S. Securities and Exchange Commission, or any provision of federal law relating to fraud against shareholders, you should bear in mind the following:

1. Ms. Cunning is not required to prove that any actual violation(s) occurred; and

2. Ms. Cunning could have even been mistaken in her belief.

JURY INSTRUCTION _20_

Sarbanes-Oxley Claim ("SOX") – Same Decision

If Ms. Cunning has established the elements of her SOX claim, Skye is not
liable if it proves by clear and convincing evidence that it would have discharged
Ms. Cunning anyway at that time for legitimate, independent reasons.

JURY INSTRUCTION _21_

Whistleblower Protection – Elements of Claim (Whistleblower Protection Act)

To prove her claim for retaliation in violation of the California Whistleblower Protection Act ("WPA" or "1102.5") Ms. Cunning must prove by a preponderance of the evidence the following elements:

1. That Skye was Ms. Cunning's employer;
2. That Ms. Cunning engaged in protected activity as defined and explained to you in these instructions;
3. That Ms. Cunning had reasonable cause to believe that
   a. The information she disclosed showed possible legal violations by Skye; and/or
   b. Ms. Cunning's participation in this conduct by Skye would amount to legal violations;
4. That Skye terminated Ms. Cunning's employment;
5. That Ms. Cunning's disclosure of possible legal violations and/or refusal to participate in them were contributing factors (see definition of "contributing factor" in these Instructions), in Skye's decision to terminate her employment;
6. That Ms. Cunning was harmed; and
7. That Skye's conduct was a substantial factor in causing Ms. Cunning harm.

JURY INSTRUCTION _22_

Reasonable Belief (WPA Claim)

For Ms. Cunning's WPA claim, when determining whether Ms. Cunning
had a reasonable belief that Skye had engaged in a possible legal violation (or
violations), you should bear in mind the following:

1. Ms. Cunning is not required to prove that any violation(s) actually
   occurred; and

2. Ms. Cunning could have even been mistaken in her belief.

JURY INSTRUCTION _23_
Whistleblower Protection – Protected Activity (WPA Claim)

To prove she engaged in protected activity under the WPA, Ms. Cunning must prove, by a preponderance of the evidence, either or both of the following:

1. That Ms. Cunning disclosed to an employee of Skye who had authority to investigate, discover, or correct possible violations of state, federal, or local laws or regulations;
   and/or

2. Ms. Cunning refused to participate in these possible legal violations.

The possible violations of state, federal, or local laws or regulations which Ms. Cunning claims she reasonably believed Skye violated are as follows:

- Securities and commodities fraud, under 18 U.S.C. 1348, which makes it illegal to knowingly execute or attempt to execute a scheme to defraud any person in connection with a security of a publicly-traded company; and

- Securities fraud, under SEC Rule 10b-5, which makes it illegal for any person to defraud or deceive someone, including through the misrepresentation of material information, with respect to the sale or purchase of a security.

- "Insider trading," under SEC Rule 10b5-1, which prohibits corporate officers and directors or other insider employees from using confidential corporate information to reap a profit (or avoid a loss) by trading in the Company's stock. This rule also prohibits "tipping" of confidential corporate information to third parties.

- Breach of the duty of loyalty, under California Labor Code Sections 2863, which requires employees to give preference to their employers' interests over their own personal interests.

## JURY INSTRUCTION _24_

### Contributing Factor (WPA Claim)

For Ms. Cunning's WPA claim, "contributing factor" means any factor
which alone, or in connection with other factors, tends to affect in any way the
outcome of the termination decision. This means that Ms. Cunning may satisfy her
burden even when other, legitimate factors also contributed to it.

JURY INSTRUCTION _25_

Whistleblower Protection Act (WPA) (Labor Code § 1102.5) – Same Decision

If Ms. Cunning proves that her disclosure of information of an unlawful act was a contributing factor to her discharge, Skye is not liable if it proves by clear and convincing evidence that it would have discharged Ms. Cunning anyway at that time for legitimate, independent reasons.

JURY INSTRUCTION _26_

## ACT OF AGENT IS ACT OF PRINCIPAL—SCOPE OF AUTHORITY
## NOT IN ISSUE

Any act or omission of an agent within the scope of authority is the act or omission of the principal.

JURY INSTRUCTION  27

RATIFICATION

A purported principal who ratifies the acts of someone who was purporting to act as the principal's agent will be liable for the acts of that purported agent, provided that the principal made a conscious and affirmative decision to approve the relevant acts of the purported agent while in possession of full and complete knowledge of all relevant events.

JURY INSTRUCTION _28_

"AT-WILL" PRESUMPTION

An employment relationship may be ended by either the employer or the employee, at any time, for any lawful reason, or for no reason at all. This is called "at-will employment."

An employment relationship is not "at will" if the employee proves that the parties, by words or conduct, agreed that the employee would be discharged only for good cause.

JURY INSTRUCTION _29_

AFFIRMATIVE DEFENSE—SAME DECISION (LAB. CODE, § 1102.6)

If Ms. Cunning proves that her disclosure of information of/refusal to participate in an unlawful act was a contributing factor to her termination, Skye is not liable if it proves by clear and convincing evidence that it would have discharged Ms. Cunning anyway at that time for legitimate, independent reasons.

## JURY INSTRUCTION  *30*

## ECONOMIC AND NONECONOMIC DAMAGES

The damages claimed by Ms. Cunning for the harm caused by Skye fall into two categories called economic damages and noneconomic damages. You will be asked on the verdict form to state the two categories of damages separately.

JURY INSTRUCTION 31

## ITEMS OF ECONOMIC DAMAGE, PAST AND FUTURE LOST EARNINGS

The following are the specific items of economic damages claimed by Ms. Cunning:

Past and future lost earnings.

If you find that Skye discharged Ms. Cunning in violation of either SOX or the WPA, then you must decide the amount of past and future lost earnings that Ms. Cunning has proven she is entitled to recover, if any. To make that decision, you must:

1. Decide the amount that Ms. Cunning would have earned up to today, including any benefits and pay increases; and

2. Add the present cash value of any future wages and benefits that she would have earned for the length of time the employment with Skye was reasonably certain to continue.

In determining the period that Ms. Cunning's employment was reasonably certain to have continued, you should consider such things as:

(a) Ms. Cunning's age, work performance, and intent regarding continuing employment with Skye;

(b) Skye's prospects for continuing the operations involving Ms. Cunning; and

(c) Any other factor that bears on how long Ms. Cunning would have continued to work.

JURY INSTRUCTION  32

## ITEMS OF NONECONOMIC DAMAGE, PHYSICAL PAIN, MENTAL SUFFERING, AND EMOTIONAL DISTRESS

The following are the specific items of noneconomic damages claimed by Ms. Cunning:

Emotional distress.

No fixed standard exists for deciding the amount of these noneconomic damages. You must use your judgment to decide a reasonable amount based on the evidence and your common sense.

To recover for future emotional distress, Ms. Cunning must prove that she is reasonably certain to suffer that harm. For future emotional distress, determine the amount in current dollars paid at the time of judgment that will compensate Ms. Cunning for future emotional distress. This amount of noneconomic damages should not be further reduced to present cash value because that reduction should only be performed with respect to economic damages.

## JURY INSTRUCTION _33_
## PREJUDGMENT INTEREST (CIV. CODE, § 3288)

If you decide that Ms. Cunning is entitled to recover damages for past economic loss in one or more of the categories of damages that she claims, then you must decide whether she should also receive prejudgment interest on each item of loss in those categories. Prejudgment interest is the amount of interest the law provides to a plaintiff to compensate for the loss of the ability to use the funds. If prejudgment interest is awarded, it is computed from the date on which each loss was incurred until the date on which you sign your verdict.

Whether Ms. Cunning should receive an award of prejudgment interest on all, some, or none of any past economic damages that you may award is within your discretion. If you award these damages to Ms. Cunning, you will be asked to address prejudgment interest in the special verdict form.

JURY INSTRUCTION *34*

## LIMITATION ON REMEDIES -AFTER-ACQUIRED EVIDENCE

Skye claims that after it discharged Ms. Cunning, it discovered that Ms. Cunning improperly copied company property. Skye claims that it would have discharged Ms. Cunning anyway if it had known that Ms. Cunning improperly copied company property. You must decide whether Skye has proved all of the following:

1. That Ms. Cunning improperly copied company property;

2. That Ms. Cunning's misconduct was sufficiently severe that Skye would have discharged her because of that misconduct alone had Skye known of it; and

3. That Skye would have discharged Ms. Cunning for her misconduct as a matter of settled company policy.

If you find that Skye has proved that Ms. Cunning improperly copied company property, and that, had Skye known of the misconduct earlier, it would have discharged Ms. Cunning as required by the elements above, then Ms. Cunning may recover damages only for any time before the date on which Skye discovered the misconduct. Skye must prove the date of discovery if it is contested.

JURY INSTRUCTION _35_

## PUNITIVE DAMAGES— ENTITY DEFENDANT—TRIAL NOT BIFURCATED

If you decide that Skye's conduct in violation of the WPA caused Ms. Cunning harm, you must decide whether that conduct justifies an award of punitive damages. The purposes of punitive damages are to punish a wrongdoer for the conduct that harmed the plaintiff and to discourage similar conduct in the future. You may award punitive damages against Skye only if Ms. Cunning proves that Skye engaged in that conduct with malice, oppression, or fraud. To do this, Ms. Cunning must prove one of the following by clear and convincing evidence:

1. That the conduct constituting malice, oppression, or fraud was committed by one or more officers, directors, or managing agents of Skye, who acted on behalf of Skye; [or]

2. That the conduct constituting malice, oppression, or fraud was authorized by one or more officers, directors, or managing agents of Skye; [or]

3. That one or more officers, directors, or managing agents of Skye knew of the conduct constituting malice, oppression, or fraud and adopted or approved that conduct after it occurred.

"Malice" means that Skye acted with intent to cause injury or that Skye's conduct was despicable and was done with a willful and knowing disregard of the rights or safety of another. A person acts with knowing disregard when the person is aware of the probable dangerous consequences of the person's conduct and deliberately fails to avoid those consequences.

"Oppression" means that Skye's conduct was despicable and subjected Ms. Cunning to cruel and unjust hardship in knowing disregard of her rights.

"Despicable conduct" is conduct that is so vile, base, or contemptible that it

would be looked down on and despised by reasonable people.

"Fraud" means that Skye intentionally misrepresented or concealed a material fact and did so intending to harm Ms. Cunning.

An employee is a "managing agent" if the employee exercises substantial independent authority and judgment in corporate decision-making such that the employee's decisions ultimately determine corporate policy.

There is no fixed formula for determining the amount of punitive damages, and you are not required to award any punitive damages. If you decide to award punitive damages, you should consider all of the following factors in determining the amount:

(a) How reprehensible was Skye's conduct? In deciding how reprehensible Skye's conduct was, you may consider, among other factors:

1. Whether the conduct caused physical harm;

2. Whether Skye disregarded the health or safety of others;

3. Whether Ms. Cunning was financially weak or vulnerable and Skye knew Ms. Cunning was financially weak or vulnerable and took advantage of her;

4. Whether Skye's conduct involved a pattern or practice; and

5. Whether Skye acted with trickery or deceit.

(b) Is there a reasonable relationship between the amount of punitive damages and Ms. Cunning's harm that Skye knew was likely to occur because of its conduct?

(c) In view of Skye's financial condition, what amount is necessary to punish it and discourage future wrongful conduct? You may not increase the punitive award above an amount that is otherwise appropriate merely because Skye has substantial financial resources. Punitive damages may not be used to punish Skye for the impact of its alleged misconduct on persons other than Ms. Cunning.

JURY INSTRUCTION _36_

## DUTY TO DELIBERATE

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision.

Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right, or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

JURY INSTRUCTION __37__

## CONSIDERATION OF EVIDENCE—CONDUCT OF THE JURY

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves. Except for discussing the case with your fellow jurors during your deliberations.

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, computer, or any other means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media. This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it, although I have no information that there will be news reports about this case; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been

excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings and a mistrial could result that would require the entire trial process to start over. If any juror is exposed to any outside information, please notify the court immediately.

## JURY INSTRUCTION _38_

## COMMUNICATION WITH COURT

If it becomes necessary during your deliberations to communicate with me, you may send a note through the clerk, signed by your presiding juror or by one or more members of the jury. No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court. If you send out a question, I will consult with the parties before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged. Do not disclose any vote count in any note to the court.

JURY INSTRUCTION  *39*

RETURN OF VERDICT

A verdict form has been prepared for you. After you have reached unanimous agreement on a verdict, your foreperson should complete the verdict form according to your deliberations, sign and date it, and advise the clerk that you are ready to return to the courtroom.