ALTUS LAW FIRM
Andrew J. Jaramillo (198303)
andrew.jaramillo@altuslawfirm.com
Sean T. Nguyen (206245)
sean.nguyen@altuslawfirm.com
5 Park Plaza, Suite 200
Irvine, California 92614
(949) 346-3391

Attorneys for Plaintiff
WENDY CUNNING

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| WENDY CUNNING, an individual,<br><br>           Plaintiff,<br><br>     vs.<br><br>SKYE BIOSCIENCE, INC., a Nevada Corporation; and DOES 1-10, inclusive,<br><br>           Defendant. | Case No.: 8:21-cv-00710-DOC-KES<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**<br><br>**Hearing**:<br>Judge:      Hon. David O. Carter<br>Date:        March 20, 2023<br>Time:       8:30 a.m.<br>Courtroom: 10A<br><br>Judgment Entered:    February 14, 2023 |

BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

## **TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................... 1

II. RELEVANT FACTS & PROCEDURAL HISTORY ....................................... 1

III. LEGAL ARGUMENT ...................................................................................... 3

    A. As the Prevailing Plaintiff, Cunning is Entitled to Recover her Reasonable Attorneys' Fees ......................................................................................... 3

        1. Both SOX and the WPA Allow Recovery of Reasonable Attorneys' Fees ... 3

        2. Cunning Prevailed in this Action ............................................................ 4

    B. Cunning's Requested Attorneys' Fees Are Reasonable Under the Accepted "Lodestar" Method .......................................................................... 4

        1. Summary of Altus' Lodestar Calculations .............................................. 4

        2. Cunning's Hourly Billing Rates Are Reasonable ................................... 5

        3. The Hours Incurred in Prosecuting this Case Are Reasonable .............. 6

    C. A Multiplier of 1.5 is Warranted ................................................................ 7

        1. This Case Posed Unusually Complex Issues, Which the Parties Litigated Extensively and Skillfully ......................................................... 9

        2. Cunning's Counsel Had to Forgo Other Representation Because of the Commitment Required to Prosecute This Case ................................ 9

        3. Cunning's Counsel Undertook Substantial Contingent Risk to Litigate This Case ...................................................................................... 10

        4. The Extraordinary Result Achieved Benefits Other Would-be Whistleblowers and the Investing Public, But Will Not Involve Taxpayer Money ............. 10

        5. A Multiplier of 1.5 is Appropriate ........................................................ 11

IV. CONCLUSION ................................................................................................ 11

BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

# TABLE OF AUTHORITIES

**Cases**

*Bargas v. Rite Aid Corp.,* 2017 WL 10403361 (C.D. Cal. July 10, 2017) .................................. 6

*Buckhannon Bd. & Care Home, Inc. v. West Virginia Dept. of Health & Human Resources,*
    532 U.S. 598 (2001) ............................................................................................................ 4

*Burlington v. Dague*, 505 U.S. 557 (1992) ................................................................................ 8

*Chavez v. City of Los Angeles*, 47 Cal.4th 970 (2010) .............................................................. 7

*City of Oakland v. Oakland Raiders*, 203 Cal.App.3d 78 (1988) ............................................ 11

*Crommie v. Pub. Utils. Comm'n*, 840 F. Supp. 719 (N.D. Cal. 1994) ..................................... 11

*Envtl. Prot. Info. Ctr. v. California Dep't of Forestry & Fire Prot.,*
    190 Cal.App.4th 217 (2010) ................................................................................................ 6

*Ferland v. Conrad Credit Corp.*, 244 F.3d 1145 (9th Cir. 2001) ............................................... 4

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ............................................................................... 4

*Ketchum v. Moses,* 24 Cal.4th 1122 (2001) ................................................................... 8, 10, 11

*Laffey v. Northwest Airlines, Inc*. 572 F.Supp. 354 (D.D.C.1983) ............................................ 6

*Lealao v. Beneficial California, Inc.*, 82 Cal.App.4th 19 (2000) ............................................... 8

*Leuzinger v. County of Lake*, 2009 U.S. Dist. LEXIS 29843 (N.D. Cal. Mar. 27, 2009) .......... 8

*Mangold v. Cal. Pub. Utilities Comm'n*, 67 F.3d 1470 (9th Cir. 1995) .................................... 7

*Nadarajah v. Holder*, 569 F.3d 906 (9th Cir. 2009) .................................................................. 5

*Pavillard v. Ignite Int'l, Ltd.,* 2022 WL 2390185 (C.D. Cal. June 17, 2022) ............................. 6

*Perdue v. Kenny A*., 559 U.S. 542 (2010) .................................................................................. 4

*Serrano v. Priest*, 20 Cal.3d 25 (1977) ...................................................................................... 8

*Serrano v. Unruh*, 32 Cal.3d 621 (1982) ................................................................................. 10

*Texas State Teachers Ass'n v. Garland Independent School Dist*., 489 U.S. 782 (1989) .......... 4

*Theme Promotions, Inc. v. News Am. Mktg. FSI, Inc*., 731 F.Supp.2d 937 (N.D.Cal.2010) .... 6

*United Steelworkers of Am. v. Phelps Dodge Corp*., 896 F.2d 403 (9th Cir. 1990) .................. 5

*Van Asdale v. Int'l Game, Tech.*, 2011 WL 2118637 (D. Nev. May 24, 2011) ......................... 2

BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

**Statutes**

18 U.S.C. § 1514A ................................................................................................ 1, 3

Cal. Lab. Code § 1102.5 ....................................................................................... 1, 4

## I. INTRODUCTION

On January 18, 2023, a jury in this Court found in favor of plaintiff Wendy Cunning ("Cunning") on her two claims of whistleblower retaliation against defendant Skye Bioscience, Inc. ("Skye") brought under the federal Sarbanes-Oxley Act, 18 U.S.C. §1514A ("SOX") and the California Whistleblower Protection Act, Labor Code §1102.5 ("WPA"). The jury awarded Cunning $4,853,460.00 in damages from Skye. As such, she is the prevailing party in this lawsuit and is entitled to reasonable attorneys' fees under both of the afore-mentioned statutes.

This case was staffed leanly with just two attorneys. Yet Cunning's counsel at Altus Law Firm ("Altus") were forced to invest over 1,850 hours prosecuting her claims because Skye's attorneys fought them at every step. The work necessary to overcome Skye's tenacious defense was substantial. This, and the unique challenges of complex issues in the biopharmaceutical industry account for much of the time spent. Even so, **all** of the time spent was necessary.

Indeed, the reasonableness of Cunning's request herein is demonstrated by the fact that the Lodestar amount claimed – even including the time spent on this motion – is **less** than the amount Skye spent on its own attorneys to defend this action. In a lawsuit for insurance indemnification that Skye filed in this court on February 17, 2023, it claimed that "to date, Skye has been forced to pay approximately $1,443,205 in defense fees and costs incurred in connection with the Cunning lawsuit." *See Skye Bioscience, Inc. v. Partner Re Ireland Insurance, DAC*, Central District of California Case No, 2:23-cv-01218, Docket No. 1 (Complaint) at 7:25-27.

Here, Cunning respectfully requests an award of $2,042,775.00, which represents a lodestar attorneys' fees amount of $1,361,850.00 with a multiplier of 1.5.

## II. RELEVANT FACTS & PROCEDURAL HISTORY

On March 1, 2018, Skye hired Cunning as its Vice President of Business Operations, a role in which she reported directly to the company's Chief Executive Officer, Brian Murphy. During Cunning's employment, she observed conduct which she believed was unlawful and/or misleading. She complained and refused to participate in the conduct she objected to and, in retaliation, was fired from her employment in July 2019.

-1-

BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

...

In January 2020, Cunning filed an administrative complaint with OSHA, which is a prerequisite for pursuing a claim under SOX. She requested that the matter be closed after the necessary safe-harbor time period required and then filed her lawsuit against Skye in April 2021.[1] In addition to her SOX claim, Cunning filed a claim for violation of the WPA.

After filing her lawsuit, the case was heavily litigated – as demonstrated by Skye's own $1.443m in defense costs – and the parties engaged in extensive discovery and motion practice. Nine witnesses were deposed over thirteen separate days. (Nguyen Dec. ¶ 5). Additionally, Cunning's counsel at Altus Law Firm ("Altus") was required twice move to compel discovery with Judge Karen Scott to compel the depositions and testimony of Avtar Dhillon (twice) and Rule 30(b)(6) witnesses for Skye and its parent company Emerald Health Sciences, Inc. ("EHS"). (Nguyen Dec. ¶¶ 7-8). Altus also had to file or oppose the following motions: (1) opposed Skye's voluminous motion for summary judgment, or in the alternative summary adjudication; (2) Skye's Motion to Amend the Scheduling Order to Pursue a claim against Cunning; (3) Cunning's motion to amend the Scheduling Order to add Skye's EHS as a defendant;[2] (4) filed four motions *in limine* to exclude certain evidence at trial; (5) successfully opposed and defeated all nine motions *in limine* filed by Skye. (Nguyen Dec. ¶ 14).

Moreover, a significant amount of time was spent meeting and conferring with Skye to obtain documents and information responsive to Cunning's discovery. Skye often claimed that it had produced all responsive documents, only to then turn around and produce such documents the day before or during a deposition. (See Nguyen Dec. ¶ 9).

---

[1] Cunning's recoverable attorneys' fees include those spent in connection with her prerequisite complaint to OSHA prior to filing this lawsuit. *See Van Asdale v. Int'l Game, Tech.*, 2011 WL 2118637 at *15 (D. Nev. May 24, 2011) (Because 18 U.S.C. § 1514A(C) "does not limit the recovery of fees to those incurred in connection with the action filed in the district court, the court finds Plaintiffs are entitled to recover reasonable attorneys' fees incurred in pursuing the complaint before the Secretary of Labor").

[2] As can be seen in Altus's billing invoice filed concurrently herewith, all of monetary amounts incurred by Cunning's counsel on the motion to add Emerald Health sciences ("EHS") as a defendant have been reduced to zero, as EHS was ultimately dismissed from the action.

As an example of the discovery gamesmanship Skye engaged in, Cunning's attorneys expended significant time trying to obtain documents demonstrating when investor Josh Berkowitz sold his holdings in Skye to support her claim that he sold it based on non-public information disclosed to him (e.g., insider trading) that she protested. They noticed a Rule 30(b)(6) deposition in part on this issue and Skye produced its CEO Punit Dhillon ("Punit"), who testified that he did not know when Berkowitz sold his shares. At trial, however, Punit contradicted Skye's verified written discovery responses and his prior testimony and claimed that Berkowitz sold his shares prior to any disclosure of non-public information. (Nguyen Dec. ¶¶ 11-13). This is just one of many examples of Skye's discovery antics that drove up Cunning's litigation costs in this matter.

The parties also unsuccessfully mediated this matter twice - in December 2021 and again in October 2022 – with Judge Carla Woehrle. (Nguyen Dec. ¶ 15).

This matter was tried before this court and a jury beginning on January 3, 2023, with closing arguments delivered on January 17, 2023. The next day, the jury returned a verdict in Cunning's favor, awarding her: (1) $512,500 in economic damages, (2) $840,960 in non-economic damages, & (3) $3,500,000 in punitive damages. In total, Cunning was awarded $4,853,460.00 –**precisely** the amount she asked the jury to award to her. She also expended a significant amount of attorney time in defeating Skye's after-acquired evidence defense that she should not be entitled to economic damages after Skye discovered she took documents from it. The jury specifically rejected this heavily litigated contention – but only after significantly driving up Cunning's costs.

### III.     LEGAL ARGUMENT

**A.     As the Prevailing Plaintiff, Cunning is Entitled to Recover her Reasonable Attorneys' Fees**

    1.     <u>Both SOX and the WPA Allow Recovery of Reasonable Attorneys' Fees</u>

18 U.S.C. § 1514A allows an employee who prevails in a retaliation lawsuit brought under that section to recover "all relief necessary to make the employee whole." *Id*. at (c)(1). This includes "litigation costs, expert witness fees, and reasonable attorney fees." *Id*. at (c)(2)(C).

Likewise, the WPA authorizes the court to award reasonable attorney's fees to a plaintiff who prevails in a lawsuit for violation of that statute. Cal. Lab. Code § 1102.5 (j) ("The court is authorized to award reasonable attorney's fees to a plaintiff who brings a successful action for a violation of these provisions").

### 2. Cunning Prevailed in this Action

To be entitled to an award of fees, the plaintiff must have prevailed on some significant issue in the litigation. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Texas State Teachers Ass'n v. Garland Independent School Dist.*, 489 U.S. 782, 791-92 (1989).

A plaintiff "prevail[s]" when actual relief on the merits of her/his claim materially alters the parties' legal relationship in a way that directly benefits the plaintiff. *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dept. of Health & Human Resources* 532 US 598, 603-604, (2001).

Here, given the jury awarded to Cunning the precise amount that she asked for, there can be no dispute that she is the prevailing party.

## B. Cunning's Requested Attorneys' Fees Are Reasonable Under the Accepted "Lodestar" Method

To determine a "reasonable" attorney fee award, this Court must start by calculating the "lodestar" amount (the product of multiplying the number of hours reasonably expended on the litigation by Cunning's attorneys by their reasonable hourly rates). *Perdue v. Kenny A.*, 559 U.S. 542, 552-553 (2010); *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149, fn. 4 (9th Cir. 2001).

### 1. Summary of Altus' Lodestar Calculations

In support of this motion for attorneys' fees, Cunning's attorneys at Altus have submitted a detailed list of itemized time entries, kept in the normal course of counsel's practice. (Jaramillo Dec. ¶ 7, Exh. 1; Nguyen Dec. ¶ 16). As part of this submission, Cunning's counsel has carefully reviewed the time records in this case and reduced the total amount for certain entries, such as 36.2 hours spent on Cunning's motion to amend to add EHS as a defendant. Having done so, the following is a summary of Cunning's lodestar calculations, fully itemized in the time entries attached as Exhibit 1 to the Jaramillo Dec. filed concurrently herewith.

| Timekeeper | Admitted (Years) | Rate | Hours | Total |
|---|---|---|---|---|
| Andrew J. Jaramillo | 1998 (24) | $750.00 | 621.5 | $466,125.00 |
| Sean T. Nguyen | 2000 (23) | $750.00 | 1,230.5 | $922,875.00 |
| | | Totals | 1,852.0 | $1,389,000.00 |
| | | Reduction | (36.2) | ($27,150.00) |
| | | Total Fees | | $1,361,850.00 |

2.   Cunning's Hourly Billing Rates Are Reasonable

Cunning seeks an hourly rate of $750 for each of her law firm's two attorneys, which as explained herein, is entirely reasonable. Andrew Jaramillo and Sean Nguyen are very experienced labor and employment law attorneys who have been practicing for approximately 24 and 23 years, respectively. (Jaramillo Dec., ¶ 3; Nguyen Dec., ¶ 2-4). Collectively, they have more experience than Skye's *three* trial attorneys combined (37 years), and yet their total attorneys' fee bill is still less than Skye's was to defend this action. In fact, the Court was very complimentary of the conduct of all attorneys at trial several times.

"Affidavits of the plaintiff['s] attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases . . . are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). Courts may also rely on decisions by other courts awarding similar rates for work performed in the same geographical area by attorneys with comparable levels of experience. *See Nadarajah v. Holder*, 569 F.3d 906, 917 (9th Cir. 2009). Accordingly, the relevant community here is Southern California and the Central District of California.

In 2014, this very same Court approved a $750 per hour rate for an attorney with 17 years of experience in prosecuting a class action employment case. *See Cardenas v. McLane Foodservice, Inc.*, SACV 10-473 (C.D. Cal. 2012) (approving rate for attorney admitted in 1997). Two other courts in the Central District presiding over single-plaintiff employment cases have approved hourly attorney rates above those Cunning seeks here – $800 in 2017, and $900 in 2022. *See Bargas v. Rite Aid Corp.,* No. CV1303865MWFJEMX, 2017 WL 10403361, at *2

-5-

BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

(C.D. Cal. July 10, 2017) (In 2017, $800 hour rate for attorney with 32 years of experience was reasonable in a single-plaintiff wage & hour case); *Pavillard v. Ignite Int'l, Ltd.,* No. 2:21-CV-01306-RGK-EX, 2022 WL 2390185, at *2 (C.D. Cal. June 17, 2022) ($900 hourly rate for attorney with 32 years of experience reasonable in a single-plaintiff lawsuit alleging California labor code violations for late payment of wages). The attorneys in those cases had only slightly more experience than Cunning's attorneys and were prosecuting wage claims that were arguably much simpler in nature than those presented by Cunning in this case.

Furthermore, in 2022, two different courts approved the hourly rates of $750.00 for Cunning's counsel, in *Maxwell vs Crawford & Company* (Fresno Superior Court, Case No. 16CECG02457) and *Arnold v. OSF International, Inc. (San Bernardino Superior Court*, Case No. CIVDS1705798). (Jaramillo Decl., ¶ 6).

Next, Altus' hourly rates are in line with the Laffey Matrix, which is an index that courts may rely upon in determining reasonable rates in fee shifting cases prepared by the United States Attorney's Office for the District of Columbia. *Laffey v. Northwest Airlines, Inc*. 572 F.Supp. 354 (D.D.C.1983); *Theme Promotions, Inc. v. News Am. Mktg. FSI, Inc*., 731 F.Supp.2d 937, 947 (N.D.Cal.2010). The Laffey Matrix shows that the hourly rates requested by Cunning's attorneys are more than reasonable because attorneys with twenty or more years of experience can charge $997 per hour. See http://www.laffeymatrix.com/see.html, (Nguyen Declaration, ¶ 17, Exhibit "1").

### 3. The Hours Incurred in Prosecuting this Case Are Reasonable

As explained above in Section II, this was a heavily-litigated case at every juncture. Thirteen days of depositions were commenced, a significant amount of time was spent meeting and conferring over discovery issues and Cunning prevailed in compelling depositions twice before Judge Scott. (Nguyen Dec. ¶¶ 5, 8-9). The parties twice mediated the case.

When determining the reasonableness of the hours spent on litigation, the most important factor to consider, both in the view of the State of California and in the view of this Court under the current circumstances, is the plaintiff's success. *See Envtl. Prot. Info. Ctr. v. California Dep't of Forestry & Fire Prot.*, 190 Cal. App. 4th 217, 238 (Dec. 15, 2010) ("California law, like

federal law, considers the extent of a plaintiff's success a crucial factor in determining the amount of a prevailing party's attorney fees."). "[U]nder state law as well as federal law, a reduced fee award is appropriate when a claimant achieves only limited success." *Chavez v. City of Los Angeles*, 47 Cal. 4th 970, 989 (2010) (citations omitted).

Cunning has been successful at virtually every stage of this lawsuit, as she: (1) prevailed on her motion to amend her complaint, (2) defeated Skye's motion to add counterclaims against her, (3) defeated Skye's voluminous and complex motion for summary judgment/adjudication, (4) successfully compelled multiple depositions in two separate informal motions before Judge Scott, (5) defeated Skye's nine motions *in limine*, and (6) prevailed on most of the four *in limine* motions she filed.³ Thus, even before trial, Cunning's litigation efforts were almost completely successful. (Nguyen Dec., ¶ 14).

Also, Cunning has not sought all fees she has incurred against Skye. Not included in Cunning's fee request is time expended in: (1) moving to add EHS as a defendant, and (2) defending against and compelling to arbitration the separate state action Skye filed against her in retaliation for her suing Skye. (Nguyen Dec., ¶ 16). Thus, counsel has expended significantly more in fees and costs in vindicating Cunning's rights than Cunning seeks in this motion.

The most telling fact to show the reasonableness of Cunning's fee request is the amount Skye expended in defending itself in this lawsuit: $1,443,205. An amount in excess of the fees and costs requested by Cunning.

C. A Multiplier of 1.5 is Warranted

Cunning asks the Court to award her a multiplier based on her claims under the WPA.

The Ninth Circuit has held that federal trial courts should apply state law to application of multipliers to awards made under state law. *See Mangold v. Cal. Pub. Utilities Comm'n*, 67 F.3d 1470, 1479 (9th Cir. 1995) ("State law, however, applies to this question, and California authority allows multipliers for fee-on-fee awards.") Thus, courts evaluating fee claims in cases

---

³ Two of Plaintiff's motions (MIL Nos. 2 & 3) were deemed moot as Skye agreed to what Plaintiff was asking for in her motions on the record before the Court. The court took one motion under submission (P's MIL No. 1) and denied P's MIL No. 4 but later compelled Avtar to appear for a third day of deposition. (Dkt No. 117).

-7-

BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

which have California claims - such as here - need not recognize, for example, the bar to enhancement of lodestar fees on the basis of contingency risk. *See Lealao v. Beneficial California, Inc.*, 82 Cal.App.4th 19, 43 (2000) (*comparing Burlington v. Dague*, 505 U.S. 557 (1992) with California law).

The California Supreme Court declared that "fee awards should be fully compensatory." *Ketchum v. Moses,* 24 Cal. 4th 1122, 1133 (2001). A lodestar multiplier is a component of full compensation, and not a windfall:

> Under our precedents, the unadorned lodestar reflects the general local hourly rate for a fee-bearing case; it does not include any compensation for contingent risk, extraordinary skill, or any other factors a trial court may consider under *Serrano*. The adjustment to the lodestar figure, e.g., to provide a fee enhancement reflecting the risk that the attorney will not receive payment if the suit does not succeed, constitutes earned compensation; unlike a windfall, it is neither unexpected nor fortuitous. Rather, it is intended to approximate market-level compensation for such services, which typically includes a premium for the risk of nonpayment or delay in payment of attorney fees.

*Id*. at 1138; *see also Leuzinger v. County of Lake*, No. C 06-00398 SBA, 2009 U.S. Dist. LEXIS 29843, at *26 (N.D. Cal. Mar. 27, 2009) ("An enhancement is not a windfall, but earned compensation in the form of a premium reflecting the risk of nonpayment or delay in payment of attorney fees.").

The relevant factors include: (1) the complexity of the legal issues and the skill used to present them; (2) whether the litigation precluded other employment by the attorneys; (3) the contingent nature of the fees; (4) the results achieved; (5) the benefit to the public; and (6) whether taxpayer money will be used to pay the judgment. *Ketchum*, 24 Cal. 4th at 1132; *Serrano v. Priest*, 20 Cal.3d 25, 48 (1977); *Leuzinger*, 2009 U.S. Dist. LEXIS 29843, at *28.

Cunning requests that the Court apply a lodestar multiplier of 1.5.

BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

1. <u>This Case Posed Unusually Complex Issues, Which the Parties Litigated Extensively and Skillfully</u>

This case involved a number of novel issues that that required substantial analysis and research. Skye was a pre-clinical pharmaceutical start-up in the process of developing a cannabinoid-based treatment for Glaucoma. Cunning had to prove that she was fired for complaining that: (a) Skye engaged in disclosing non-public information that resulting in insider trading, (b) made misleading statements to the investing public about its prodrug and market opportunities; and (c) officers engaged in self-dealing to the detriment of investors. Thus, the parties had to research, brief and explain to this Court and the jury complicated issues concerning securities laws and obligations owed by corporate officers, and had to gain a clear understanding of drug development science and the steps needed to reach clinical trial stages. Additionally, because Skye's former Board Chairman, Avtar Dhillon, refused to answer questions during his three depositions and at trial by pleading the 5th Amendment stemming from the multiple criminal and civil actions against him, Cunning had to navigate around complex criminal issues as well.

This was not a run-of-the-mill retaliation case but required skilled lawyering demonstrated by both sides. As such, the Court on several occasions complimented both sides on their performance and professionalism towards the end of trial and afterwards.

2. <u>Cunning's Counsel Had to Forgo Other Representation Because of the Commitment Required to Prosecute This Case</u>

A multiplier is also necessary to compensate counsel for the representations Cunning's counsel turned down to provide this high-quality representation. Altus consists of two attorneys and both were heavily engaged and preoccupied by prosecuting Cunning's case. In pursing this time-intensive, high-risk lawsuit, they necessarily turned down and diverted resources from other cases, thus foregoing other sources of revenue. (Jaramillo Dec. ¶ 12). This factor supports applying the requested multiplier.

BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

3. <u>Cunning's Counsel Undertook Substantial Contingent Risk to Litigate This Case</u>

Multipliers "compensate for the risk of loss generally in contingency cases as a class." *Ketchum*, 24 Cal. 4th at 1132-34. As the *Ketchum* Court observed:

> [A] contingent fee contract, since it involves a gamble on the result, may properly provide for a larger compensation than would otherwise be reasonable[...] A **contingent fee must be higher than a fee for the same legal services paid** as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services. The implicit interest rate on such a loan is higher because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much higher than that of conventional loans. A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions. If he is paid no more, competent counsel will be reluctant to accept fee award cases."

*Id*. (emphasis added). A multiplier is necessary to incentivize attorneys to take cases on contingency and compensate them fully. *Serrano v. Unruh*, 32 Cal.3d 621, 625 (1982).

In this matter, Cunning's Counsel at Altus have worked on contingency for more roughly three and a half years without receiving any compensation. The matter will likely continue longer because Skye has already indicated that it would appeal the verdict. They have also advanced the costs of this litigation, about half of which is not recoverable under Rule 54. (Jaramillo Dec. ¶ 13). Failing to apply a multiplier would have a strong chilling effect on Altus' willingness to accept further cases like this on contingency.

4. <u>The Extraordinary Result Achieved Benefits Other Would-be Whistleblowers and the Investing Public, But Will Not Involve Taxpayer Money</u>

The verdict in this case is remarkable given the jury awarded to Cunning the precise amount she requested. As the parties' themes showed, Skye repeatedly emphasized at trial that it was Cunning's word against many others and that she was the only person at the company to

BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

have complained. But the jury saw the truth and decisively ruled in Cunning's favor after just a few hours of deliberation. Very few SOX or WPA cases are tried successfully and Cunning's accomplishment will encourage others who also may feel alone to stand up and blow the whistle on wrongdoing. Here, Cunning's complaints also were about fraud on investors and therefore companies will be more reluctant to retaliate against whistleblowers as well as take more caution in what they will say to the investing public.

Since Skye is not a public entity, no taxpayer money will be used to pay for any enhancement.

### 5. A Multiplier of 1.5 is Appropriate

Given the substantial risks to Cunning's counsel in pursuing this case and benefits conferred in this litigation, a multiplier of 1.5 is very appropriate. Courts have awarded multipliers of two or more in cases involving similar degrees of risk and complexity. *Crommie v. Pub. Utils. Comm'n*, 840 F. Supp. 719, 725 (N.D. Cal. 1994) (affirming a multiplier of 2.0 in an age discrimination case brought under FEHA and the ADEA); *Ketchum*, 24 Cal. 4th at 1132-33 (upholding the trial court's right to award a multiplier of 2.0); *City of Oakland v. Oakland Raiders*, 203 Cal. App. 3d 78, 82 (1988) (awarding a multiplier of 2.34).

### IV.  CONCLUSION

Based on the foregoing, Cunning respectfully requests that the Court grant her Motion for an award of fees and costs in the amounts requested.

Dated: February 27, 2023

/s/ Andrew J. Jaramillo
Andrew J. Jaramillo
Sean T. Nguyen
ALTUS LAW FIRM

Attorneys for Plaintiff
WENDY CUNNING

BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES