UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No. 8:21-CV-00710-DOC-KESx          Date:  October 19, 2023

Title: WENDY CUNNING V. SKY BIOSCIENCE, INC.

---

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

| Karlen Dubon | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
|---|---|
| None Present | None Present |

---

PROCEEDINGS (IN CHAMBERS):     ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW [176]

Before the Court is Defendant Skye Bioscience's Motion for Judgment as a Matter of Law (JMOL) ("Motion") (Dkt. 176). The Court finds this matter suitable for resolution without oral argument. Fed. R. Civ. P. 78; L.R. 7-15. Having reviewed the moving papers submitted by the parties, the Court now **DENIES** Defendant's Motion.

**I. BACKGROUND**

   **A. FACTS**

The Court has previously summarized the facts in this case in its Order Denying Defendant's Motion for Summary Judgment ("MSJ Order") (Dkt. 78) so only a brief review is necessary here. Skye Biosciences ("Skye") hired Plaintiff Wendy Cunning ("Cunning") as Vice President of Business Operations in March 2018 after she served as a part-time consultant beginning in April 2016. *Id.* at 2. Cunning believed that Brian Murphy ("Murphy"), Skye's CEO and member of the board, was receiving funds to start

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:21-cv-00710-DOC-KESx                                         Date: October 19, 2023

                                                                                                            Page 2

a competing company from Joshua Berkowitz ("Berkowitz"), an investor who once owned shares in Skye. *Id.* Cunning was concerned about Murphy starting a competing company with Berkowitz and communicated those concerns to only Murphy. *Id.*

During Cunning's employment, Skye had to decide whether to release licenses it had from the University of Mississippi ("UM"). *Id.* Cunning believed that Murphy wanted to release the licenses because he had a deal with Teewinot Life Sciences, Inc. ("Teewinot") to take the licenses and become CEO of Teewinot. *Id.* Before learning of Murphy's plan, Cunning believed relinquishing the licenses was the best decision for Skye and made a presentation to that effect for another Board member and an employee. *Id.* at 3. Skye initially gave up its license but started work to reacquire the licenses later that year. *Id.* Plaintiff complained to Murphy about the decision to release the licenses. *Id.*

Later during Cunning's employment, Skye retained Galuconix Biosciences Inc. ("Glauconix") to examine the efficacy and causal relationship between THC-VHS, a licensed cannabinoid-derivative molecule of THC used to treat glaucoma. *Id.* The study uncovered positive biomarker signals for two out of three donors; Cunning believed that this sample size was too small to produce reliable results and required additional testing. *Id.* Nonetheless, Murphy released a March 12, 2019, press release stating that the studies "were significant across a spectrum of findings." *Id.* Glauconix and Skye suggested conducting a second study with additional donors to confirm the findings, and Cunning asked Murphy whether a second study would be conducted. *Id.*

In May 2019, Cunning, on Skye's behalf, purchased and forwarded to Murphy two market landscape and forecast reports by Decision Resources Group ("DRG") addressing non-alcoholic steatohepatitis ("NASH") and endometriosis. *Id.* at 3. The next month, Murphy gave a presentation to Skye's Board, a presentation which Cunning did not attend, which showed market opportunity projections exceeding those gathered from the DRG report. *Id.* at 4.

In January 2019, Murphy, Punit Dhillon, a member of Skye's Board of Directors, and Doug Cesario ("Cesario"), Skye's CFO, began reviewing Skye's staffing needs. *Id.* Cunning was terminated on July 18, 2019. *Id.* Cunning filed a complaint with the U.S. Occupational Safety and Health Administration ("OSHA") around six months later. *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:21-cv-00710-DOC-KESx                                  Date: October 19, 2023

                                                                              Page 3

### B. PROCEDURAL HISTORY

Plaintiff filed her complaint on April 16, 2021. (Dkt. 1). In her First Amended Complaint ("FAC") (Dkt. 27), Plaintiff asserted four causes of action:

1) Violation of Whistleblower Protection under the Sarbanes-Oxley Act ("SOX") (18 U.S.C. § 1514A)
2) Retaliation under California Labor Code § 1102.5 ("The Whistleblower Protection Act" or "WPA")
3) Wrongful Termination in Violation of Public Policy
4) Intentional Infliction of Emotional Distress

*See generally* FAC.

The trial in this case began on January 3, 2023. See Minutes of Jury Trial – First Day (Dkt. 130). The jury found in Cunning's favor. The Court entered judgment in Cunning's favor on February 13, 2023, decreeing that "plaintiff Wendy Cunning shall recover $4,853,460 as against defendant Skye Bioscience, Inc, together with reasonable attorneys' fees and costs." Judgment on Special Verdict (Dkt. 165).

Skye filed the present Motion on March 13, 2023. Cunning opposed one week later. Opposition to Notice of Motion and Motion for JMOL ("Opposition" or "Opp.") (Dkt. 185). Defendant replied on March 27, 2023. Reply in Support of Notice of Motion and Motion for JMOL ("Reply") (Dkt. 188).

### II. STANDARD OF REVIEW

A renewed motion for JMOL is properly granted "if the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002). A jury's verdict must be upheld if it is supported by substantial evidence that is adequate to support the jury's findings, even if contrary findings are also possible. *Harper v. City of Los Angeles*, 533 F.3d 1010, 1021 (9th Cir. 2008).

Reviewing a renewed motion for JMOL requires scrutiny of the entire evidentiary record, but the court "must not weigh the evidence, [and instead] should simply ask whether the [nonmoving party] has presented sufficient evidence to support the jury's

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:21-cv-00710-DOC-KESx                    Date: October 19, 2023

Page 4

conclusion." *Id.* In so doing, the court must draw all reasonable inferences in favor of the nonmoving party and "disregard all evidence favorable to the moving party that the jury is not required to believe." *Id.*

A Rule 50(b) motion is a renewed Rule 50(a) motion; thus, a proper post-verdict Rule (b) motion is limited to the grounds asserted in the pre-deliberation Rule 50(a) motion." *EEOC v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009). A party cannot raise arguments in a post-trial motion for JMOL under Rule 50(b) that it did not raise in its preverdict Rule 50(a) motion. *Id.* (citations omitted).

## III. DISCUSSION

Skye is requesting a renewed grant for JMOL because they allege that (1) Cunning did not have an objectively reasonable belief that Skye violated an applicable law, (2) Skye terminated Cunning for legitimate independent reasons from Cunning's disclosures, and (3) the statute of limitations bars the state retaliation claim. Cunning argues that Skye should not be granted a JMOL because (1) Cunning had an objectively reasonable belief that Skye violated an applicable law, (2) sufficient evidence was presented for the jury to conclude Cunning was fired for complaining about suspected illegal activity by Skye, and (3) Skye waived the statute of limitations argument because it did not raise the defense during its first request for JMOL.

### A. Legal Standard for Cunning's Retaliation Claims

Establishing a prima facie case under 18 U.S.C. § 1514A requires four elements: (1) the employee engaged in protected activity or conduct; (2) the employer knew or suspected the employee engaged in the protected activity; (3) the employee suffered an unfavorable personnel action, and (4) the circumstances were sufficient to raise the inference that the protected activity was a contributing factor in the unfavorable action. *Van Asdale v. International Game Technology*, 577 F.3d 989, 996 (9th Cir. 2009). To have engaged in protected activity, Cunning must have had a subjective belief and an objectively reasonable belief that the conduct being reported violated a law enumerated in 8 U.S.C. § 1514A.[1] *Id.* If the plaintiff establishes a prima facie case of retaliatory discrimination, "the employer assumes the burden of demonstrating by clear and

---

[1] The enumerated laws include 18 U.S.C. §§ 1341 (mail fraud), 1343 (wire fraud), 1344 (bank fraud), or 1348 (securities fraud), any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders. 18 U.S.C. § 1514A.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 8:21-cv-00710-DOC-KESx | Date: October 19, 2023 |

Page 5

convincing evidence that it would have taken the same adverse action in the absence of the plaintiff's protected activity." *Id.* Although a close temporal proximity between the protected activity and the adverse employment action is evidence of retaliation, the significance of this fact is considered on a case-by-case basis. *Coszalter v. City of Salem*, 320 F.3d 968, 977-978 (9th Cir. 2003).

Establishing a case under the WPA requires similar elements. A prima facie case under the California statute requires (1) the employee engaged in a protected activity; (2) the employer subjected the employee to an adverse employment action, and (3) a causal link between the two. *Moreno v. UtiliQuest, LLC*, 29 F.4th 567, 575 (9th Cir. 2022) (citing *St. Myers v. Dignity Health*, 44 Cal.App.5th 301, 311 (2019)). If the plaintiff establishes a prima facie case, the employer can avoid liability if it can prove through clear and convincing evidence that the "alleged adverse employment action would have occurred for 'legitimate, independent reasons' even if the employee had not engaged in protected whistleblowing activities." Cal. Labor Code § 1102.6; *Lawson v. PPG Architectural Finishes, Inc.*, 12 Cal.5th 703, 712 (2022). A legitimate, independent reason does not defeat a WPA claim if the employee can prove that the employer had at least one retaliatory reason for the alleged adverse employment action. *Id.* at 716.

### 1. Whether Cunning Had Objectively Reasonable Beliefs

Skye argues that Cunning did not engage in protected activity because no reasonable jury could have found that Cunning had an objectively reasonable belief that Skye violated applicable laws, thus failing to satisfy the first element of establishing a prima facie retaliation claim. Specifically, Skye argues that no reasonable jury could believe Skye violated applicable laws when Murphy: (1) provided information about the release of licenses to Mr. Berkowitz, (2) pushed to release and reattain the UM licenses (3) released the press report on the Glauconix study, and (4) presented the NASH market opportunity. Cunning argues that a reasonable jury could find that she engaged in protected activity because she had an objectively reasonable belief that, in each situation, Murphy's actions constituted fraud, or violated insider trading or securities laws.

In *Van Asdale*, the plaintiffs were lawyers who worked for International Game Technology ("IGT") and assisted with the company's merger with Anchor Gaming. 577 F.3d at 991-992. Anchor Gaming held a "wheel" patent, that was a very valuable part of its holdings. *Id.* at 992. After the merger, the plaintiffs learned about an "Australian Flyer" that they believed would invalidate Anchor Gaming's wheel patent and inquired

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 8:21-cv-00710-DOC-KESx | Date: October 19, 2023 |

Page 6

whether the Australian Flyer was disclosed to IGT prior to the merger. *Id.* at 992-993. During the time period when plaintiffs were reporting this issue, management at IGT changed such that Anchor's General Counsel during the merger became IGT's General Counsel. *Id.* at 993. A few months after meeting with the new General Counsel to discuss the patent issue, the plaintiffs' employment was terminated. *Id.* Because several former Anchor employees occupied top management positions at IGT and of the financial motives favoring nondisclosure of the Australian Flyer, which could potentially invalidate the wheel patent, the court found that the plaintiffs had an objectively reasonable belief the nondisclosure of the Australian Flyer was deliberate. *Id.* at 1001. The court also specified that Anchor or IGT did not have to engage in any actual wrongdoing, the plaintiffs' reasonable belief there was fraud was sufficient to constitute protected activity. *Id.*

### a. Dr. Murphy's call to Mr. Berkowitz

The first situation in contention is whether Cunning had a reasonable belief that Murphy's call with Berkowitz about returning the UM licenses violated an applicable law. Skye argues that Cunning lacked a reasonable belief because (1) Berkowitz was not a "corporate officer, director, or insider employee, Murphy did not engage in "insider trading," (2) Murphy did not provide nonpublic corporate information to Berkowitz because no decision was made about the return of the UM licenses during the call, and (3) Berkowitz was under a non-disclosure agreement prohibiting him from trading Skye's stock. (Dkt. 176). Cunning argues she had a reasonable belief because (1) Murphy was an "insider" by law, (2) the information that Murphy provided Berkowitz caused Berkowitz to sell his shares of Skye, and (3) Cunning was unaware that Murphy and Berkowitz signed a nondisclosure agreement. (Dkt. 184).

A reasonable jury could have believed that Cunning had an objectively reasonable belief that the Murphy and Berkowitz phone calls constituted insider trading. Jury Instruction No. 18 states that SEC Rule 10b-5 prohibited providing nonpublic corporate information to third parties to gain a profit or avoid a loss when trading a company's stock. Because third parties are prohibited from receiving such information, a reasonable jury could believe that Berkowitz would be prohibited from receiving nonpublic corporate information.

In a June 2018 phone call, Murphy informed Berkowitz that Skye was about to release the UM licenses, which Murphy was planning on reacquiring after becoming

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:21-cv-00710-DOC-KESx				Date: October 19, 2023

								Page 7

CEO of a competing cannabinoid company and attempted to recruit Berkowitz in funding the competing company. (Dkt. 176); Day 1 Tr. 67:23-68:9. On the phone call, Murphy also stated that Skye had multiple conflicts of interest with the other Emerald family of companies, they did not know how to develop drugs, and that the development of Skye's products was purposely suppressed. Day 2 Tr. 8:4-9:10. A reasonable person can believe that such information will change the valuation of Skye's stock because the company's CEO is providing direct and private insight on Skye's current and future ability to create drugs, thus constituting nonpublic corporate information.

Lastly, the existence of a nondisclosure agreement does not invalidate Cunning's objectively reasonable belief about potential insider trading. On June 22, 2016, Berkowitz signed a nondisclosure agreement that prohibited purchasing or selling securities based on material, non-public information about a publicly traded company. (Dkt. 184 Ex. F). However, nondisclosure agreements can be breached. Furthermore, between June 2018 and November 2018, Berkowitz sold all of his shares in Skye. Day 2 Tr. at 8:5-24. Because of the timing of the phone call and the selling of the shares, a reasonable jury could conclude that Cunning held an objectively reasonable belief that Skye violated SEC Rule 10b-5 because Berkowitz sold his shares in Skye soon after receiving nonpublic corporate information, despite signing a nondisclosure agreement.[2]

### b. Releasing and reattaining the UM licenses

The parties also disagree on whether Cunning's belief that Murphy violated securities laws when releasing, and late reacquiring, the UM licenses was objectively reasonable. Skye argues that Cunning agreed with the decision to return the UM licenses and helped present the recommendation to the Board of Directors; therefore, no scheme to defraud or deceive anyone in connection with a security existed. (Dkt. 176). Cunning argues that because Skye, under Murphy's leadership, released and reacquired the UM license at an increased cost, a significant shareholder sold his shares. (Dkt. 184).

In Jury Instruction No. 18, the jury was instructed that 18 U.S.C. § 1348 prohibits knowingly executing or attempting to execute a scheme to defraud any person in connection with a security of a publicly-traded company and that SEC Rule 10b-5 prohibits defrauding or deceiving someone, including through the misrepresentation of

---

[2] In its motion and reply, Skye argues that Cunning's claims fail because no person has been deceived or defrauded through Dr. Murphy's actions. The standard to establish a prima facie case for retaliation for whistleblowing does not require proof that someone has been deceived or defrauded, but that Cunning "reasonably believed that there might have been fraud" and was fired because of her complaints. *See Van Asdale*, 577 F.3d at 1001. To uphold the jury verdict, the Court does not need to find that Skye or Murphy has defrauded a person.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:21-cv-00710-DOC-KESx											Date: October 19, 2023

Page 8

material information, with respect to the sale or purchase of a security. Even though Cunning agreed with releasing the UM licenses, she only learned of Murphy's misrepresentation of his intentions with the licenses after the presentation to the Board of Directors. Day 1 Tr. at 67:3-68-18. After Murphy did not attain the CEO position at the competing company, he initiated re-acquirement of the UM licenses so the competing company would be unable to secure the licenses. Day 1 Tr. at 75:3-12. Between Skye releasing and reacquiring the UM licenses, Berkowitz sold his Skye securities. Day 2 Tr. at 8:5-24. Thus, a jury could reasonably conclude that Cunning held an objectively reasonably belief that Skye violated 18 U.S.C. § 1348 and SEC Rule 10b-5 because Berkowitz sold his Skye securities around the same time Murphy notified Berkowitz about reacquiring the UM licenses at another company.

### c. Glauconix Press Release

The next issue is whether a reasonable jury could find that Cunning held an objectively reasonable belief that Skye prematurely released the Glauconix press release, and that doing so constituted fraud. Skye argues, per Murphy's testimony, the phrase "these studies were significant across a spectrum of findings" indicated the ability to influence three mechanisms of disease; therefore, the use of the phrase was not fraudulent. (Dkt. 176). Skye also argues that no evidence was presented that anyone relied on the press release to purchase or sell a security in Skye, and evidence was presented that Skye's stock price was not materially affected. (Dkt. 176). Cunning argues that her issues with the press release extend beyond the "significant across a spectrum of findings" phrase, such as a concern that other information was omitted or misrepresented from the study, and that she believed the study was incomplete. (Dkt. 184).

The applicable law that Cunning believed Skye violated is SEC Rule 10b-5, which prohibits misrepresenting material information to defraud or deceive someone with respect to the purchase or sale of a security. While Skye provides some evidence that the text provided in the press release is not fraudulent, Cunning's concerns stemmed from misrepresentation of the study through omitting material facts. Omitting the fact that only two out of three donors positively responded in the Glauconix study and that Glauconix requested more donors to confirm the efficacy of Skye's prodrug could present an image that the Glauconix study was more promising than it actually was, which in turn can affect Skye's stock price. Because Skye's stock price can be affected when omitted information can produce misleading notions of the study's success, the jury could reasonably conclude that Cunning had an objectively reasonable belief that Skye

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | |
|---|---:|
| Case No. 8:21-cv-00710-DOC-KESx | Date: October 19, 2023 |

Page 9

misrepresented information to deceive people with respect to the purchase or sale of a security.

### d. NASH Market Size Presentation

The last issue is whether a reasonable jury could find that Cunning's belief that Murphy's NASH market size presentation constituted fraud was objectively reasonable. Skye argues that no evidence was introduced that Murphy knowingly altered the market projection to defraud anyone in connection with Skye's security, and the opportunity presented only within an internal board meeting, not to any outside investors. (Dkt. 176). Cunning argues that she reasonably believed Murphy acted fraudulently when Murphy presented a market size nearly triple the actual projected market size in the internal board meeting and at a public event with media at the University of Mississippi. (Dkt. 184).

Skye did not provide a reason why Murphy presented an inflated market size. Cunning testified that she attained a report from the DRG because they provide accurate analyst reports about sizing market opportunities. Day 2 Tr. 38:21-39:1; 40:19-25. Her testimony emphasized the importance of attaining accurate analyst reports from third parties to avoid misrepresenting the size of a company and the market opportunity because doing so can overvalue a company's share price and fraud investors to investing in areas that are not actually profitable. Day 2 Tr. 39:15-21; 41:1-13. While the information was only shared with the Board and people who signed nondisclosure agreements at the UM event, Skye did not provide a justification for Murphy to present inflated numbers from the third-party DRG report. Absent a justification or other valid reason, a jury could reasonably find that Cunning had an objectively reasonable belief that Murphy's inflation of the market size from the DRG report was a misrepresentation of material fact that could deceive someone with respect to the sale or purchase of a security.

### 2. Whether Skye had a Legitimate Independent Reason

After a plaintiff establishes a prima facie case of retaliation for whistleblowing, the employer can avoid liability if it can provide clear and convincing evidence that the same adverse employment action would have occurred absent plaintiff's protected activity. *Van Asdale*, 577 F.3d at 996; *Lawson*, 12 Cal.5th at 712. Skye asserts a legitimate, independent reason for terminating Cunning: She lacked the skills necessary to satisfy the company's newfound prioritization clinical development. (Dkt. 176). Skye also asserts that the temporal proximity between the complaints regarding the UM

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:21-cv-00710-DOC-KESx                                                      Date: October 19, 2023

Page 10

licenses and Glauconix press release with Cunning's termination is insufficient to infer the alleged protected activity contributed to Cunning's termination. (Dkt. 176). Cunning argues that Skye has provided inconsistent reasons for terminating Cunning, thus the company's pivot to clinical studies is pretext for the termination. (Dkt. 184).

Skye stated that, leading up to Cunning's termination, the company shifted its priority towards clinical development, which Cunning lacked experience in. (Dkt. 176). Clinical trials started on November 2022, nearly three and half years after Cunning's termination. Day 2 Tr. 20:17-19. While Skye states that they cannot enter clinical trials right away, they do not present a timeline explaining the three and a half year wait. The only evidence in the record indicates that Skye received an Institutional Review Board ethic committee approval in July 2022 to initiate the clinical trial. Day 2 Tr. 20:4-8. Information is not provided for a clinical trial timeline before July 2022. Absent such evidence, or a timeline, to explain the three-and-a-half-year period, a reasonable jury could find that Skye lacked clear and convincing evidence that the prioritization of clinical development was a legitimate, independent reason to terminate Cunning's employment. Thus, Skye fails to escape liability under both the SOX and WPA claim.

Lastly, Skye argues that (1) too much time has lapsed for the complaints regarding the Berkowitz and UM licenses complaints to contribute to her termination, and (2) the close temporal proximity between the Glauconix press release and NASH presentation should not be considered because of their purported legitimate, independent reason. (Dkt. 176). A temporal proximity analysis considers the time between the last act constituting protected activity and the adverse employment action. *See Allen v. Iranon*, 283 F.3d 1070, 1078 (9th Cir. 2002). Cunning's complaint about the NASH presentation was the last act that can be constituted protected activity. Skye terminated Cunning one month later Cunning. Absent a legitimate, independent reason, a reasonable jury could believe the termination was in retaliation of Cunning's complaints.

### B. Statute of Limitations

Skye argues that Cunning is unable to bring her WPA claim because the statute of limitations of filing the claim is one year and Cunning filed the claim more than one year after her employment termination. Cunning argues that Skye cannot raise this defense on this motion because it was not raised during Skye's pre-verdict motion pursuant to Rule 50(a).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 8:21-cv-00710-DOC-KESx | Date: October 19, 2023 |
| | Page 11 |

Skye did not raise the statute of limitation argument in its oral Rule 50(a) motion. *See* Nguyen Dec., ¶ 21. Because the argument was not raised in the preverdict motion, Skye has waived the argument. *Go Daddy Software,* 581 F.3d at 961. Even though the statute of limitations argument was raised in the motion for summary judgment, the argument is still waived because it was not raised in the Rule 50(a) motion. *James v. Wal-Mart Store Inc.*, 279 F.3d 883, 886-887 (9th Cir. 2002). Because Skye waived the statute of limitations argument, the Court will not address it.

## IV. DISPOSITION

For the reasons set forth above, the Court **DENIES** Skye's Motion for Judgment as a Matter of Law.

The Clerk shall serve this minute order on the parties.

Initials of Deputy Clerk: kdu

MINUTES FORM 11
CIVIL-GEN