Daniel F. Fears, Bar No. 110573
dff@paynefears.com
Erika M. Rasch, Bar No. 275815
emr@paynefears.com
Tyler B. Runge, Bar No. 310697
tbr@paynefears.com
PAYNE & FEARS LLP
Attorneys at Law
4 Park Plaza, Suite 1100
Irvine, California 92614
Telephone: (949) 851-1100
Facsimile: (949) 851-1212

Attorneys for Defendant SKYE
BIOSCIENCE, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| WENDY CUNNING, an individual,<br><br>Plaintiff,<br><br>v.<br><br>SKYE BIOSCIENCE, INC., a Nevada Corporation,<br><br>Defendant. | Case No. 8:21-cv-00710-DOC-KES<br><br>The Hon. David O. Carter<br>Courtroom 10A Santa Ana<br><br>**DEFENDANT SKYE BIOSCIENCE, INC.'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**<br><br>Complaint Filed: April 16, 2021<br>Trial Date:        September 8, 2025 |

PAYNE & FEARS LLP
Attorneys at Law
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

Pursuant to Local Rule 16-4, Defendant Skye Bioscience, Inc. ("Skye") hereby submits its Memorandum of Contentions of Fact and Law.

# I.  CLAIMS AND DEFENSES (L.R. 16-4.1)

## A.  Cunning's Claims (L.R. 16-4.1(a))

Claim 1: Skye violated the whistleblower protections of the Sarbanes-Oxley Act ("SOX") (18 U.S.C. § 1514A *et seq.*);

Claim 2: Skye violated California's Whistleblower Protection Act (Cal. Lab. Code § 1102.5);

Claim 3: Cunning is entitled to punitive damages under California's Whistleblower Protection Act.

## B.  Elements Required to Establish Plaintiff's Claims (L.R. 16-4.1(b))

### 1.  Claim 1: SOX

#### (a)  Elements

To establish a claim under 18 U.S.C. § 1514A, Cunning must prove, by a preponderance of the evidence, each of the following elements:

(1)  she engaged in protected activity or conduct, as defined by SOX;

(2)  she suffered an unfavorable personnel action;

PAYNE & FEARS LLP
Attorneys at Law
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

(3)    the decision maker knew or suspected, actually or constructively, that Cunning had engaged in the protected activity; and

(4)    the circumstances were sufficient to raise the inference that the protected activity was a contributing factor in the unfavorable personnel action.

*See Van Asdale v. Intl. Game Tech.*, 577 F.3d 989, 996 (9th Cir. 2008).

### (i)    "Protected Activity"

To establish that she engaged in protected activity, as defined by SOX, Cunning must prove, by a preponderance of the evidence, all of the following:

(1) she provided information regarding conduct that she reasonably believed constituted a violation of a rule or regulation of the SEC to a person working for Skye who had the authority to investigate, discover, or terminate the misconduct;

(2) her communication definitively and specifically related to one of the listed categories of fraud or securities violations under 18 U.S.C. § 1514A(a)(1);

(3) she had a subjective, good faith belief that the conduct she reported violated a rule or regulation of the SEC; and

(4) her belief that the conduct she reported violated a rule or regulation of the SEC was objectively reasonable under the circumstances.

*See Van Asdale*, 577 F.3d at 996–1001; *Neely v. Boeing Co.*, 823 F. App'x 494, 496 (9th Cir. 2020); 18 U.S.C. § 1514A(a)(1).

PAYNE & FEARS LLP
Attorneys at Law
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

## A)    Objectively Reasonable Belief

To have an objectively reasonable belief that there has been shareholder fraud, Cunning's theory of such fraud must at least approximate the basic elements of a claim of securities fraud. *See Van Asdale*, 577 F.3d at 1000-01. Whether Cunning's belief is objectively reasonable under the circumstances is evaluated based on the knowledge and information available to a reasonable person in the same factual circumstances with the same training and experience as Cunning. *Harp v. Charter Commc'ns, Inc.*, 558 F.3d 722, 723 (7th Cir. 2009).

Cunning has identified SEC Rule 10b-5 and 18 U.S.C. § 1348 as the bases for her theories of fraud.

SEC Rule 10b-5 states:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or any facility of any national securities exchange,

(a)    to employ any device, scheme, or artifice to defraud,

(b)    to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c)    to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

18 U.S.C. § 1348 states in relevant part:

Whoever knowingly executes, or attempts to execute, a scheme or artifice –

(1)    to defraud any person in connection with any commodity for future delivery, or any option on a commodity for future delivery, or any security of an issuer with a class of securities registered under section 12 of the Securities Exchange Act of 1934 (15 U.S.C. 78l) or that is required to file reports under section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78o(d)) . . .

shall be fined under this title, or imprisoned not more than 25 years, or both.

**B)    SEC Rule 10b-5(b) – Material Misrepresentation or Omission**

The basic elements of a claim of under Rule 10b-5(b) (*i.e.*, Cunning's claims with respect to the Glauconix press release and the NASH market size projection) are "(1) a material misrepresentation or omission of fact, (2) scienter, (3) a connection with the purchase or sale of a security, (4) transaction and loss causation, and (5) economic loss." *Van Asdale*, 577 F.3d at 1000-01.

*Materiality*

The test of materiality is objective: " . . . whether a reasonable man would attach importance [to the fact misrepresented] in determining his choice of action in the transaction in question." *Marx v. Computer Sciences Corp.*, 507 F.2d 485, 489 (9th Cir. 1974).

"Projections are 'not necessarily misleading when an issuer knows, but fails to disclose, some facts cutting the other way.' . . . [R]easonable investors understand that [projections] sometimes rest on a weighing of competing facts' and 'do[] not expect that *every* fact known to an issuer supports its [projections]." *Maso Cap. Invs. Ltd. v. E-House (China) Holdings Ltd.*, No. 22-355, 2024 U.S. App. LEXIS

PAYNE & FEARS LLP
Attorneys at Law
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

14045, at *8 (2d Cir. June 10, 2024) (quoting *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 189-90 (2015)).

### Fact Versus Opinion

"Rule 10b-5 case law distinguishes between statements of fact and opinion. A statement of fact is one that 'expresses certainty about a thing,' whereas a statement of opinion 'expresses a view, not a certainty,' and is not 'determinate [and] verifiable.'" *Kairos Inv. Mgmt. Co. LLC v. J.P. Morgan Sec. LLC*, No. 8:23-cv-01124-DOC, 2023 U.S. Dist. LEXIS 221325, at *6-7 (C.D. Cal. Dec. 11, 2023) (quoting *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 183-84 (2015)).

Future projections are opinions when they "express expectations about the future rather than presently existing, objective facts." *Id.* at *7 (quoting *In re Aratana Therapeutics Inc. Sec. Litigs.*, 315 F. Supp. 3d 737, 758 (S.D.N.Y. 2018)).

For a statement of "opinion" to be actionable under a Rule 10b-5 material misrepresentation theory of liability, it must be shown that (1) the speaker did not hold the belief he professed and (2) the belief is objectively untrue. *Kairos*, 2023 U.S. Dist. LEXIS 221325, at *7; *see also City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 615-16 (9th Cir. 2017) ("[W]hen a plaintiff relies on a theory of material misrepresentation, the plaintiff must allege both that the speaker did not hold the belief she professed and that the belief is objectively untrue.").

PAYNE & FEARS LLP
Attorneys at Law
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

DEFENDANT SKYE BIOSCIENCE, INC.'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

1    *Scienter*

2

3       Scienter is established where an individual makes a statement he knows, or is

4    reckless in not knowing, is false.  *See Gebhart v. SEC*, 595 F.3d 1034, 1041 (9th

5    Cir. 2010).  "[A] reckless omission of material facts satisfies the element of scienter

6    . . . provided that such recklessness reflects some degree of intentional or conscious

7    misconduct, . . . We refer to this standard as 'deliberate recklessness' and define it

8    as an *extreme* departure from the standards of ordinary care, which presents a danger

9    of misleading buyers or sellers that is either known to the defendant or is so *obvious*

10   that the actor must have been aware of it."  *Rhode Island v. Alphabet, Inc.*, 1 F.4th

11   687, 701 (9th Cir. 2021).

12

13       *Safe Harbor – Forward Looking Statements – Actual Knowledge*

14

15       15 U.S.C. § 78u-5 provides a safe harbor against alleged violations of Rule

16   10b-5 for forward-looking statements.  Forward-looking statements are defined as:

17   (A) a statement containing a projection of revenues, income, earnings per share "or

18   other financial items;" (B) a statement of management's plans and objectives for

19   future operations, including plans or objectives relating to the issuer's products or

20   services; (C) a statement of future economic performance; and (D) "any statement of

21   the assumptions underlying or relating to any statement described in subparagraph

22   (A), (B) or (C)."  15 U.S.C. § 78u-5(i)(1).

23

24       To determine whether a statement is forward-looking requires an examination

25   of the substance of the statement, read in context, the key inquiry being whether its

26   truth or falsity was readily discernible only after it was made.  *See Harris v. Ivax

27   Corp.*, 182 F.3d 799, 804 (11th Cir. 1999); *see, e.g.*, *Police & Fire Ret. Sys. of the

28   City of Detroit v. Axogen, Inc.*, No. 8:19-cv-69-T-60AAS, 2020 U.S. Dist. LEXIS

PAYNE & FEARS LLP
Attorneys at Law
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

7

266435, at *23 (M.D. Fla. Apr. 21, 2020) (projections of future market size were forward looking, and collecting cases).

No liability attaches for an alleged untrue statement, whether written or oral, where the statement is forward-looking and one of the following conditions is met: (1) the statement is identified as forward-looking and accompanied by "meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement;" or (2) the statement is immaterial, or (3) regardless of whether any of the foregoing conditions is met, the plaintiff fails to prove that the statement was made with actual knowledge that it was false or misleading.  15 U.S.C. § 78u-5(c)(1).

The issuer of a forward-looking statement, such as a projection, does not make the statement with "actual knowledge that it was false or misleading" when the forward-looking statement was "based upon a range of conflicting or ambiguous information from which both positive and negative inferences may be drawn." *Weiss v. Mentor Graphics Corp.*, No. CV-97-1376-ST, 1999 U.S. Dist. LEXIS 17026, at *43-44 (D.Or. Oct. 6, 1999); *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 735 F. Supp. 2d 856, 913 (N.D. Ill. 2010) ("Merely adducing evidence of information contradictory to the statements at issue does not demonstrate that the corporate officer actually knew that the statements were false or misleading."); *cf. Maso Cap. Invs. Ltd. v. E-House (China) Holdings Ltd.*, No. 22-355, 2024 U.S. App. LEXIS 14045, at *8 (2d Cir. June 10, 2024) ("[R]easonable investors understand that [projections] sometimes rest on a weighing of competing facts' and 'do[] not expect that *every* fact known to an issuer supports its [projections]." (quoting *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 189-90 (2015))).

PAYNE & FEARS LLP
Attorneys at Law
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

1

**C)    SEC Rule 10b-5(a)/(c) – Tipping**

2

3        The basic elements of a claim of securities fraud on a Rule 10b-5 theory of

4   unlawful trading based on material, nonpublic information (*i.e.*, tipping) (Cunning's

5   claim with respect to Dr. Murphy's conversation with Josh Berkowitz) are (1) a tip,

6   (2) of material non-public information, (3) in breach of a fiduciary duty of

7   confidentiality owed to shareholders, (4) for personal benefit to the tipper.  *SEC v.*

8   *Obus*, 693 F.3d 276, 286 (2d Cir. 2012).

9

10       "The requisite scienter corresponds to the first three of these elements":

11  "First, the tipper must tip deliberately or recklessly, not through negligence.

12  Second, the tipper must know that the information that is the subject of the tip is

13  non-public and is material for securities trading purposes, or act with reckless

14  disregard of the nature of the information.  Third, the tipper must know (or be

15  reckless in not knowing) that to disseminate the information would violate a

16  fiduciary duty."  *Id.*  A defendant cannot be held liable for negligently tipping

17  information.  *Id.* at 287.

18

19                    **D)    18 U.S.C. § 1348**

20

21       The basic elements of a claim for securities fraud under 18 U.S.C. § 1348 are

22  that the defendant: "(1) knowingly executed or attempted to execute a scheme or

23  plan to defraud or a scheme or plan for obtaining money or property by means of

24  false or fraudulent pretenses, representations, or promises; (2) the statements made

25  or facts omitted as part of the scheme were material; (3) [defendant] acted with the

26  intent to defraud; and (4) the scheme was in connection with the purchase or sale of

27  securities . . . ."  *United States v. Hussain*, 972 F.3d 1138, 1146 (9th Cir. 2020).

28

PAYNE & FEARS LLP
Attorneys at Law
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

**(b)    Same Decision Defense**

If Cunning meets her burden, the burden shifts to Skye to show by clear and convincing evidence that it would have taken the same unfavorable personnel action for legitimate, independent reasons, even if the Cunning had not engaged in protected activity. *See Van Asdale*, 577 F.3d at 996.

Claim 2: Labor Code § 1102.5

To establish a claim under Labor Code section 1102.5, Cunning must prove, by a preponderance of evidence, each of the following elements:

(1)    she engaged in a protected activity, as defined by section 1102.5;

(2)    she was subjected to an adverse employment action; and

(3)    the protected activity was a contributing factor in the adverse employment action.

Cal. Lab. Code § 1102.6, *Lawson v. PPG Architectural Finishes, Inc.*, 12 Cal. 5th 703, 717–18 (2022).

For purposes of section 1102.5, and as relevant to the facts of this case, "protected activity" is "disclosing information . . . to a person with authority over the employee . . . if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation." Cal. Lab. Code § 1102.5(b). To qualify as "protected activity," a plaintiff must have a "reasonably

PAYNE & FEARS LLP
Attorneys at Law
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

PAYNE & FEARS LLP

Attorneys at Law
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

based suspicion of illegal activity." *Ross v. City of Riverside*, 36 Cal. App. 5th 580, 592 (2019). This suspicion must be objectively reasonable. *See People ex rel. Garcia-Brower v. Kolla's, Inc.*, 14 Cal. 5th 719, 734 (2023). For the suspicion to be objectively reasonable, the plaintiff must point to "some statute, rule or regulation which may have been violated by the conduct he disclosed." *Ross*, 36 Cal. App. 5th at 592; *see also Tawatari-Tsuneta v. CVS Rx Servs., Inc.*, No. 8:22-cv-02251-AH-(JDEx), 2025 WL 1090392, at *6 (C.D. Cal. Mar. 6, 2025).

If Cunning meets her burden, the burden shifts to Skye to show by clear and convincing evidence that it would have taken the same action for legitimate, independent reasons, even if the Cunning had not engaged in protected activity. Cal. Lab. Code § 1102.6.

Claim 3: Punitive Damages

To establish a claim for punitive damages, in addition to prevailing on her section 1102.5 claim (Cunning's SOX claim does not provide a basis for punitive damages), Cunning must prove, by clear and convincing evidence:

(1)    conduct constituting malice, oppression, or fraud was committed by one or more officers, directors, or managing agents of Skye, who acted on behalf of Skye, or

(2)    that the conduct constituting malice, oppression, or fraud was authorized by one or more officers, directors, or managing agents of Skye, or

(3)    that one or more officers, directors, or managing agents of Skye knew of the conduct constituting malice, oppression, or fraud and adopted or approved that

conduct after it occurred.

"Malice" means that Skye acted with intent to cause injury or that Skye's conduct was despicable and was done with a willful and knowing disregard of the rights or safety of another.  A person acts with knowing disregard when the person is aware of the probable dangerous consequences of the person's conduct and deliberately fails to avoid those consequences.

"Oppression" means that Skye's conduct was despicable and subjected Cunning to cruel and unjust hardship in knowing disregard of her rights.

"Despicable conduct" is conduct that is so vile, base, or contemptible that it would be looked down on and despised by reasonable people.

"Fraud" means that Skye intentionally misrepresented or concealed a material fact and did so intending to harm Cunning.

An employee is a "managing agent" if the employee exercises substantial independent authority and judgment in corporate decision-making such that the employee's decisions ultimately determine corporate policy.

### C.    Brief Description of Key Evidence in Opposition to Plaintiff's Claims (L.R. 16-4.1(c))

Because Cunning's SOX and section 1102.5 claims are substantively identical, and her claim for punitive damages are derivative of the section 1102.5 claim, Skye organizes its brief description of key evidence in opposition to Cunning's claims by the four alleged "complaints" that Cunning made.

PAYNE & FEARS LLP
Attorneys at Law
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

PAYNE & FEARS LLP
Attorneys at Law
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

*Complaint 1: Dr. Murphy's Call to Joshua Berkowitz*

Cunning's first alleged concern relates to Dr. Murphy's interactions with Joshua Berkowitz, a Skye investor, in summer 2018.  She claims Dr. Murphy told her he was trying to convince Mr. Berkowitz to fund a new cannabinoid company to compete with Skye.  According to her, Dr. Murphy told her he had told Mr. Berkowitz that Skye was releasing its licenses and that Skye's board "w[as] holding the company back."  Cunning claims she complained to Dr. Murphy that this was insider trading and "created a crisis in confidence" that could lead to shareholder lawsuits.

Skye will present the following key evidence in opposition to this claim:

- Testimony regarding the substance of the conversation between Dr. Murphy and Berkowitz.

- Testimony and documentary evidence showing that Berkowitz did not engage in insider trading.

- Testimony and documentary evidence showing that Berkowitz did not own any shares in Skye at the time of the conversation.

- Testimony and documentary evidence showing that Berkowitz had a non-disclosure agreement with Skye.

- Testimony regarding Cunning's lack of knowledge about Berkowitz's shares or trading.

- Testimony that the phone call and Cunning's alleged complaint occurred over a year before Cunning's termination.

- Testimony that Dr. Murphy was not angry with Cunning at the time of her alleged complaint or that he held it against her.

- Testimony and documentary evidence that Cunning and Skye entered into an employment agreement several months after Cunning's alleged complaint.

### *Complaint 2: UM Licenses*

Cunning's second alleged concern relates to Skye's license options with the University of Mississippi ("UM"). When she began her employment, Skye had a variety of UM licenses and license options. In June 2018, Skye had to decide whether to continue paying to maintain license options. Dr. Murphy and Cunning discussed with Skye's board whether to maintain the license options or not. Skye's board asked Dr. Murphy to "renegotiate" with UM and "capture everything under one license." Skye then negotiated an "all fields license" with UM. Cunning claims she later learned Dr. Murphy had been communicating with a now-defunct Skye competitor, Teewinot Life Sciences ("Teewinot"), about potential jobs. Although she believed releasing the license options was the right decision for Skye, she claimed Dr. Murphy wanted Teewinot to purchase them to "undercut anything Skye was doing." She claims she told Dr. Murphy that doing so would be "illegal and . . . a conflict of interest" and would violate his "fiduciary responsibility to [Skye's] shareholders."

Skye will present the following key evidence in opposition to this claim:

PAYNE & FEARS LLP
Attorneys at Law
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

- Testimony and documentary evidence regarding Skye's license and option holdings with UM in 2018 and 2019.

- Testimony and documentary evidence regarding Skye's communication to UM regarding not renewing certain option agreements.

- Testimony and documentary evidence regarding Skye's strategic reasons for negotiating an "all-fields" license.

- Testimony regarding Cunning's lack of knowledge about Skye's strategic reasons for negotiating an "all-fields" license.

- Testimony that Cunning believed releasing the license options was the right decision.

- Testimony and documentary evidence reflecting that Dr. Murphy did not intend to steal the UM licenses to obtain a new CEO position at Teewinot.

- Testimony that the incident occurred over a year before Cunning's termination.

- Testimony that Dr. Murphy was not angry with Cunning at the time of her alleged complaint or that he held it against her.

- Testimony and documentary evidence that Cunning and Skye entered into an employment agreement several months after Cunning's alleged complaint.

DEFENDANT SKYE BIOSCIENCE, INC.'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

1    *Complaint 3: Glauconix Press Release*

2

3        Cunning's third concern allegedly arose in connection with a March 2019

4    press release.  Skye had retained Glauconix Biosciences ("Glauconix"), a clinical

5    research organization investigating ocular drugs, for an early-stage study of the

6    capacity of a molecule Skye had licensed to reduce intraocular pressure associated

7    with hypertensive glaucoma.  Skye and Glauconix worked together and issued

8    separate press releases about the study.  Cunning claims she complained to Dr.

9    Murphy about the press release in March 2019, allegedly saying it was "misleading"

10   and could "get [Skye] in trouble."  Cunning allegedly believed it was misleading

11   because the study's results were not "statistically significant" (a term the release did

12   not use) and because Glauconix had subsequently suggested additional studies.

13

14       Skye will present the following key evidence in opposition to this claim:

15

16   •    Testimony and documentary evidence showing that the Glauconix data

17        was sufficient to issue a press release.

18

19   •    Testimony and documentary evidence that there was nothing misleading

20        about the Glauconix press release that Skye issued.

21

22   •    Testimony and documentary evidence showing Glauconix issued a

23        nearly identical press release on the data findings.

24

25   •    Testimony and documentary evidence showing Cunning does not

26        understand the mechanism of action of the Glauconix data and that it

27        was not statistically significant, and would not be statistically

28        significant even with the proposed additional project.

PAYNE & FEARS LLP
Attorneys at Law
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

- Testimony that Cunning's complaint is based on her personal belief that a study of three donors where one does not respond "can't validate anything."

- Testimony that Glauconix asked Skye if it wished to pursue a second study for business reasons and not because Glauconix believed that an additional study was scientifically necessary.

*Complaint 4: NASH Market Size Presentation*

Cunning's fourth alleged concern related to which sources she thought Dr. Murphy should have relied on in a June 2019 presentation about non-alcoholic steatohepatitis ("NASH") to Skye's board of directors.  In preparing that presentation, Cunning purchased forecast reports by Decision Resources Group ("DRG") that projected future market opportunities for NASH.  DRG projected opportunities of $8.875 billion by 2027.  Dr. Murphy also reviewed projections from almost a dozen sources, including banks, market analysts, and companies involved in the NASH space, which projected opportunities up to $66 billion.  Most of the sources Dr. Murphy looked at were in the 20 to 25-billion-dollar range.  Cunning did not consult those sources; she never looked at any other sources to evaluate whether DRG's analysis was correct, although she had previously prepared a slide estimating the global NASH market at $35 billion.  Dr. Murphy's board presentation explained that the market opportunities for NASH by 2025 could exceed $25 billion, and he told the board that projections ranged from 8 billion to 66 billion.  He thus acknowledged the wide range in projections from a number of sources, but Cunning believed he should only use a single source and a single projection — the one she got.  Cunning claims Dr. Murphy also presented these projections at a UM event.  No investors were present at either meeting, though Cunning claims some

PAYNE & FEARS LLP
Attorneys at Law
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

17

1    unidentified "media event people" attended the UM presentation.

3    • Testimony and documentary evidence regarding Cunning sending one
4    email to Doug Cesario that included the market projection slides related
5    to the NASH and Endometriosis markets, but without any complaint or
6    explanation about her position.

8    • Testimony regarding the sources that Dr. Murphy used for his NASH
9    market size projections.

11    • Testimony and documentary evidence showing how highly unlikely it
12    was that the NASH market size projections used by Dr. Murphy would
13    be made public or influence investors and/or the market.

15    **D.**    **Summary of Defendant's Affirmative Defenses (L.R. 16-4.1(d))**

17    Skye will pursue the following affirmative defenses:

19    (1)    <u>Fifth Affirmative Defense</u>: Statute of Limitations

21    (2)    <u>Eighth Affirmative Defense</u>: Failure to Mitigate Damages

23    (3)    <u>Tenth Affirmative Defense</u>: Punitive Damages Violate Procedural and
24    Substantive Due Process

26    (4)    <u>Fourteenth Affirmative Defenses</u>: Legitimate, Non-Retaliatory Reason

PAYNE & FEARS LLP
Attorneys at Law
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

E.    **Elements Required to Establish Defendant's Affirmative Defenses and Key Evidence Relied On In Support of Each Affirmative Defense (L.R. 16-4.1(e), (f))**

(1)    Fifth Affirmative Defense: Statute of Limitations

As this Court has already held, claims brought pursuant to Labor Code Section 1102.5 for alleged retaliation are subject to a one-year statute of limitations period. *Tapia v. Hyatt Corporation*, No. 8:20-cv-02346-DOC-JDEx, 2021 WL 3076650, *5 (C.D. Cal. June 30, 2021); *Butler v. Prime Healthcare Centinela, LLC*, No. CV 19-1738 PA (SSX), 2019 WL 3207818, **3–4 (C.D. Cal. May 10, 2019); *Feast-Williams v. Merrill Lynch Fenner Pierce & Smith Inc.*, No. CV1806451SJOSSX, 2018 WL 9517023, *8 (C.D. Cal. Dec. 18, 2018).

Cunning filed her section 1102.5 claim on April 16, 2021, more than one year after being terminated on July 18, 2019.  Her claim, therefore, is time-barred.

Cunning attempts to avoid the statute of limitations bar to her section 1102.5 claim by invoking equitable tolling of her claim while her administrative complaint with the Occupational Safety and Health Administration ("OSHA") was pending. To prove her entitlement to equitable tolling, Cunning must show that (1) Skye had timely notice of her claim, (2) Skye was not prejudiced by being required to defend the otherwise barred claim, and (3) Cunning acted reasonably and in good faith in waiting to file her claim.  Cunning's equitable tolling claim will be presented to the jury.  *See Cunning v. Skye Bioscience, Inc.*, No. 23-55248, 2024 WL 4540775 (9th Cir. Oct. 22, 2024).

PAYNE & FEARS LLP
Attorneys at Law
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

Cunning cannot show that Skye was not prejudiced or that she acted reasonably and in good faith in waiting to file her claim.  Cunning was free to file her civil complaint alleging SOX violations 180 days after filing her OSHA complaint, which was July 1, 2020.  Had she filed her civil complaint at this time, her claims would have been timely.  Cunning's decision to wait until April 16, 2021 to abandon the administrative process, before OSHA completed its investigation, in favor of litigation was not in "good faith."

(2)     Eighth Affirmative Defense: Failure to Mitigate Damages

Cunning must make every reasonable effort to minimize or reduce her damages for loss of income by seeking other employment or income for her services.  Cunning's damages must be reduced by any portion of her loss of compensation that Skye proves by a preponderance of the evidence is a result of her failure to make reasonable efforts to reduce her loss of compensation because she unjustifiably failed to take a new job of like kind, status, and pay which was available to Cunning until March 2021, or Cunning failed to make reasonable efforts to find such new job until March 2021. *See* Ninth Circuit Model Jury Instruction 5.3 – Damages; CACI 3962.

Skye will present the following key evidence in support of this defense:

- Documentary evidence reflecting that Cunning delayed in seeking new employment.

- If permitted in response to Skye's pending motion to reopen damages discovery (ECF No. 261), expert testimony regarding Cunning's alleged economic damages.

PAYNE & FEARS LLP
Attorneys at Law
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

(3)    <u>Tenth Affirmative Defense: Punitive Damages Violate Procedural and Substantive Due Process</u>

Cunning's FAC, to the extent it seeks punitive damages, violates Skye's rights to protection from "excessive fines" as provided in the Eighth Amendment of the United States Constitution and in Article I, Section 17 of the Constitution of the State of California, and Skye's rights to procedural due process under the Fourteenth Amendment to the United States Constitution and under the California Constitution.

The punitive damages sought do not bear a close relationship to appropriate civil fines or penalties established by the legislature or by administrative agencies under authority delegated by the legislature.

Skye will present the following key evidence in support of this defense:

- Cunning was terminated due to Skye's reorganization and move towards clinical development.

- Neither Dr. Murphy, nor anyone else at Skye, engaged in any illegal activity.

(4)    <u>Fourteenth Affirmative Defenses: Legitimate, Non-Retaliatory Business Reason</u>

If Cunning establishes a *prima facie* case under SOX and/or section 1102.5, then the burden shifts to Skye to prove, by clear and convincing evidence, that it would have taken the same personnel action in the absence of Cunning's alleged protected activity. *See* 18 U.S.C. § 1514A; Cal. Lab. Code § 1102.6.

PAYNE & FEARS LLP

Attorneys at Law
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

PAYNE & FEARS LLP
Attorneys at Law
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

In 2019, Skye was an emerging research-phase pharmaceutical company with a handful of employees, a limited budget, no human clinical programs, no correspondence with the FDA regarding plans for a clinical program, and no products — only the hope of one. To develop products, the company needed someone with specific expertise in overseeing clinical trials. That, however, was not Cunning's area of expertise. She was not a clinical researcher and had not worked in a lab for many years; her expertise was in marketing, but Skye had no product to market. Given Skye's needs and budget constraints, and the mismatch of Cunning's expertise relative to where the company was going, Skye terminated Cunning's employment on July 18, 2019.

Skye will present the following key evidence in support of its same-decision defense:

- Testimony and documentary evidence reflecting that Cunning was aware that she may be fired because her role was no longer needed.

- Testimony and documentary evidence that Cunning's job responsibilities were things that Skye did not need or could not afford at their current stage of development and limited resources.

- Skye's hiring of clinical operations manager and director the month after Cunning was terminated, including Dennis Kim and Alice Chen.

- Testimony and documentary evidence regarding Skye's financial position during and after Cunning's engagement with Skye.

- Testimony and documentary evidence regarding Skye's focus on moving NB1111 through clinical development.

- Evidence and testimony regarding Cunning's attempt to modify her job description in February 2019.

## F.     Identification of Any Anticipated Evidentiary Issues and Party's Position (L.R. 16-4.1(h))

Motions *in Limine*:

Skye will seek to preclude the following evidence on the grounds that such evidence is hearsay, irrelevant, prejudicial to Skye and/or confuses the issues, and therefore is inadmissible.

1. Motion *in Limine* No. 1 to exclude any reference or allegations to Dr. Murphy referring to Cunning as a "woman of ill repute." This is highly prejudicial, irrelevant to the action, and will confuse the jury. Fed. R. Evid. 401, 402, and 403.

2. Motion *in Limine* No. 2 to exclude reference to SEC charges against Avtar Dhillon and the arrest of Avtar Dhillon, and to exclude the testimony of Avtar Dhillon. Evidence of the SEC charges and arrest is highly prejudicial, irrelevant to the action, and will confuse the jury. Fed. R. Evid. 401, 402, and 403; *see also Cunning v. Skye Bioscience, Inc.*, No. 23-55248, 2024 WL 4540775 (9th Cir. Oct. 22, 2024). Skye will not call Avtar Dhillon to testify. Cunning may not call him to testify for the sole purpose of impeaching him with

PAYNE & FEARS LLP
Attorneys at Law
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

otherwise inadmissible evidence. *See United States v. Gomez-Gallardo*, 915 F.2d 553, 555 (9th Cir. 1990).

3.   Motion *in Limine* No. 3 to exclude evidence regarding Skye allegedly "rewarding" Avtar Dhillon by giving him 1,650,000 additional shares of its stock and extending the vesting period. This is highly prejudicial, irrelevant to the action, and will confuse the Court. Fed. R. Evid. 401, 402, and 403.

4.   Motion *in Limine* No. 4 to exclude any reference to the Dhillons' alleged involvement with the mafia, Jim Heppell's alleged ties to Russia, the Citron Report, and Punit Dhillon being "forced to resign as CEO of OncoSec in disgrace" (*i.e.*, "unsubstantiated rumors"). This is highly prejudicial, irrelevant to the action, and will confuse the jury; Skye will not "open the door" to such evidence by arguing that Cunning did not report her alleged complaints to the Board of Directors. Fed. R. Evid. 401, 402, and 403; *see Cunning v. Skye Bioscience, Inc.*, No. 23-55248, 2024 WL 4540775 (9th Cir. Oct. 22, 2024). Such testimony or evidence would also be inadmissible hearsay in violation of Rule 802. Fed. R. Evid. 802.

5.   Motion *in Limine* No. 5 to exclude Plaintiff's new damages model as disclosed in her June 28, 2025, supplemental interrogatory responses. Plaintiff's damages model is based on speculation and hearsay, and it reflects improper lay opinion.

6.   Motion *in Limine* No. 6 to exclude use of the unduly prejudicial, confusing, and irrelevant phrase "pump and dump."

1    Use of Confidential Materials at Trial:

2

3         During the discovery phase of this lawsuit, the parties exchange confidential

4    materials under a stipulated protective order.  (ECF 15.)  Pursuant to the terms of the

5    Order, the parties are to reach a separate agreement for use at trial of documents and

6    testimony that has been designated "confidential."

7

8    Pre-Termination Emotional Distress:

9

10        Cunning may not present evidence of pre-termination emotional distress.  *See*

11   *Cunning v. Skye Bioscience, Inc.*, No. 23-55248, 2024 WL 4540775 (9th Cir. Oct.

12   22, 2024).

13

14        **G.    Issues of Law, Proper Interpretation of a Governing Statute (L.R.**

15             **16-4.1(i))**

16

17        Skye incorporates by reference its discussion above regarding Cunning's

18   claims, defendant's opposition to Cunning's claims, Skye's affirmative defenses,

19   and motions *in limine*.

20

21        Cunning claims in her Memorandum of Contentions of Fact and Law that

22   "The Court should decide the issue of whether a one or three-year statute of

23   limitations applies to Cunning's claim under California Labor Code Section 1102.5

24   where Plaintiff is not seeking statutory penalties."  (ECF No. 274, at 12:21-24.)

25   Yet, in the operative First Amended Complaint, Cunning's prayer for relief seeks "a

26   civil penalty of $10,000 for each violation under Labor Code § 1102.5." (ECF No.

27   27, at 11:28.)  And Cunning claims elsewhere in her Memorandum of Contentions

28   of Fact and Law that "Cunning has not abandoned any claims or issues pleaded in

PAYNE & FEARS LLP

Attorneys at Law
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

25

the operative complaint." (ECF No. 274, at 13:12-13.)  Accordingly, as the Court has already held, Cunning seeks a civil penalty and, therefore, the one-year statute of limitations applies.

## II.    BIFURCATION OF ISSUES (L.R. 16-4.3)

Cunning seeks to recover compensatory and punitive damages, in a sum according to proof.  (ECF 27, FAC 11-12)  Skye requests that the Court exercise its discretion under Federal Rule of Civil Procedure 42(b) and bifurcate the trial into two phases: (1) liability and compensatory damages; and (2) punitive damages if there has been a finding of malice, oppression, or fraud.

The bifurcation of Plaintiff's claim for punitive damages will promote convenience and efficiency in trying the liability issues first.  Indeed, because there is a high standard set for an award of punitive damages – a plaintiff must establish by clear and convincing evidence that the defendant acted with fraud, malice, or oppression – it is standard practice to bifurcate trials when a claim for punitive damages is made.

It is common practice for courts within the Ninth Circuit to bifurcate liability from damages, and Rule 42(b) expressly gives courts the authority to separate trials into liability and damages phases. *See DeAnda v. City of Long Beach*, 7 F.3d 1418, 1421 (9th Cir. 1993); *see also Arthur Young & Co. v. United States Dist. Ct.*, 549 F.2d 686, 697 (9th Cir. 1977); *Hopkins v. Dow Corning Corp.*, 33 F.3d 1116, 1119 (9th Cir. 1994); *Ortega v. O'Connor*, 146 F.3d 1149, 1154 (9th Cir. 1998). Courts routinely bifurcate such matters so that the first phase of the proceedings focuses exclusively on the defendant's liability, whereas the second phase (when necessary) focuses on the amount of punitive damages that should be awarded only if it is

PAYNE & FEARS LLP
Attorneys at Law
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

1    established that a defendant acted with malice, oppression, or fraud. *See Butler v.*

2    *Home Depot*, No. C-94-4335 SI, C-95-2182 SI, 1996 WL 421436, at *1 (N.D. Cal.

3    Jan. 25, 1996); *see also Figueroa v. Gates*, 207 F. Supp. 2d 1085, 1102 (C.D. Cal.

4    2002). Accordingly, Skye requests that the Court bifurcate the trial into separate

5    liability and punitive damages phases.

6

7    Moreover, if the Court, as requested, bifurcates the trial pursuant to Federal

8    Rules of Civil Procedure, Rule 42(b), Cunning should be prohibited from

9    introducing any evidence of Skye's current profits or financial condition unless the

10    trier of fact returns a verdict for Cunning and finds that Skye is guilty of malice,

11    oppression or fraud. *See Garcia v. City of Imperial*, 270 F.R.D. 566, 572–73 (S.D.

12    Cal. 2010).

13

14    Skye's net worth, profit and general financial condition are not relevant to

15    issues of, nor admissible to prove, liability and/or compensatory damages. *See*

16    *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977) (finding that

17    evidence of a defendant's financial condition cannot be considered in determining

18    compensatory damages). Therefore, in a bifurcated trial, the Court should find that

19    evidence of Skye's financial condition is not admissible during the liability phase of

20    trial. Fed. R. Evid. 402.

21

22    Moreover, evidence of Skye's financial condition should be excluded because

23    the admission thereof is unduly prejudicial to Skye, will mislead the jury, and will

24    undoubtedly cause needless confusion of the issues. Information regarding Skye's

25    finances will prejudice Skye if intermingled with the evidence on the issue of

26    liability, because the jury may punish Skye simply because of its success and/or

27    size, even if the Court ultimately rules Cunning has failed to prove malice,

28

PAYNE & FEARS LLP
Attorneys at Law
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

27

1  oppression, or fraud.  Justice O'Connor succinctly articulated the prejudice

2  corporate defendants can face:

3

4      [i]t is lamentable that the popular prejudice against these corporations should

5      be so powerful as to taint the administration of justice, but we cannot close

6      our eyes to the fact. Corporations are mere abstractions and, as such, are

7      unlikely to be viewed with much sympathy.  Moreover, they often represent a

8      large accumulation of productive resources; jurors naturally think little of

9      taking an otherwise large sum of money out of what appears to be an

10     enormously larger pool of wealth. Finally, juries may feel privileged to

11     correct perceived social ills stemming from unequal wealth distribution by

12     transferring money from 'wealthy' corporations to comparatively needier

13     plaintiffs.

14

15  *TXO Prod. Corp. v. Alliance Res. Corp.*, 509 U.S. 443, 490–91 (1993) (dissenting

16  opinion) (internal quotations omitted).

17

18      Consequently, any evidence of, or argument regarding, Skye's net worth,

19  revenues, or financial condition should be excluded at the liability phase of trial on

20  the grounds that it is irrelevant, will confuse the issues, mislead the jury, and unduly

21  prejudice Skye. *See* Fed. R. Evid. 403 ("Evidence may be excluded "if its probative

22  value is substantially outweighed by the danger of . . . unfair prejudice, confusing

23  the issues, misleading the jury. . . ").

24

25  **III.    JURY TRIAL (L.R. 16-4.4)**

26

27      Cunning has requested a jury trial. (ECF 27, FAC.)

28

PAYNE & FEARS LLP

Attorneys at Law
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

IV.   **ATTORNEYS' FEES (L.R. 16-4.5)**

Reasonable attorneys' fees are available to a prevailing employee pursuant to SOX (18 U.S.C. § 1514A(c)(2)(C)) and California Labor Code section 1102.5. Skye reserves its right to challenge Cunning's ability to recover attorneys' fees and the reasonableness of any amount of attorneys' fees sought by Cunning.

In the event Skye is deemed the prevailing party, Skye reserves its right to recover attorneys' fees and/or costs according to proof as permitted by law.

V.   **ABANDONMENT OF ISSUES (L.R. 16-4.6)**

Cunning abandoned her wrongful termination in violation of public policy and Intentional Infliction of Emotional Distress claims that were in her previous Complaint.  (ECF 1.)  Cunning has also agreed to dismiss defendant Emerald Health Sciences, Inc. ("EHS") as a defendant in this matter.  The parties notified the Court with a Notice of Settlement with EHS.  (ECF 52.)

Skye does not currently seek to proceed on the following affirmative defenses: First Affirmative Defense (Failure to State a Claim), Second Affirmative Defense (Cunning's SOX Claim is Barred to the Extent It was Not Included in the DOL Complaint), Third Affirmative Defense (Plaintiff Did Not Engage in Protected Activity), Fourth Affirmative Defense (Cunning Failed to Comply with Statutory Prerequisites or Conditions Precedent), Sixth Affirmative Defense (After Acquired Evidence), Seventh Affirmative Defense (Unclean Hands, Laches, Waiver, Estoppel), Ninth Affirmative Defense (Workers' Compensation Exclusivity), Eleventh Affirmative Defense (Failure to Satisfy Elements of Section 3294(b)), Twelfth Affirmative Defense (Failure to Utilize Policy), Thirteenth Affirmative

DEFENDANT SKYE BIOSCIENCE, INC.'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

PAYNE & FEARS LLP
Attorneys at Law
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

Defense (Proximate Cause), Fifteenth Affirmative Defense (Legitimate Reasons), Sixteenth Affirmative Defense (Avoidable Consequences), Seventeenth Affirmative Defense (Consent), Eighteenth Affirmative Defense (Statutes are Unenforceable), Nineteenth Affirmative Defense (Estoppel/Res Judicata), Twentieth Affirmative Defense (Contributory Negligence), Twenty-First Affirmative Defense (Arbitration), and Twenty-Second Affirmative Defense (EHS not Cunning's employer).

Skye intends to challenge, substantively, the elements addressed in its First, Third, and Eleventh Affirmative Defenses, but acknowledges that such defenses are not properly "affirmative" defenses. Skye's Fifteenth Affirmative Defense is duplicative of its Fourteenth Affirmative Defense.

DATED:  August 4, 2025          PAYNE & FEARS LLP
                                Attorneys at Law


                          By:   _/s/ Erika M. Rasch_
                                DANIEL F. FEARS
                                ERIKA M. RASCH
                                TYLER B. RUNGE

                                Attorneys for Defendant SKYE
                                BIOSCIENCE, INC.

4929-6203-3744.4