Daniel F. Fears, Bar No. 110573
dff@paynefears.com
Erika M. Rasch, Bar No. 275815
emr@paynefears.com
Tyler B. Runge, Bar No. 310697
tbr@paynefears.com
PAYNE & FEARS LLP
Attorneys at Law
4 Park Plaza, Suite 1100
Irvine, California 92614
Telephone: (949) 851-1100
Facsimile: (949) 851-1212

Attorneys for Defendant SKYE BIOSCIENCE, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| WENDY CUNNING, an individual,<br><br>Plaintiff,<br><br>v.<br><br>SKYE BIOSCIENCE, INC., a Nevada Corporation,<br><br>Defendant. | Case No. 8:21-cv-00710-DOC-KES<br><br>The Hon. David O. Carter<br>Courtroom 10A Santa Ana<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION IN LIMINE NO. 3 TO EXCLUDE EVIDENCE REGARDING SKYE ALLEGEDLY "REWARDING" AVTAR DHILLON BY GIVING HIM 1,650,000 ADDITIONAL SHARES OF ITS STOCK AND EXTENDING THE VESTING PERIOD**<br><br>Date: August 11, 2025<br>Time: 9:30 a.m.<br>Crtrm.: 10A<br><br>Trial Date:   September 8, 2025 |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on August 11, 2025, at 9:30 a.m., or as soon thereafter as counsel may be heard in the above-entitled Court located at 411 West Fourth Street, Courtroom 10A, Santa Ana, California, 92701, Defendant Skye Bioscience, Inc. ("Skye") will and hereby does move this Court to preclude Plaintiff Wendy Cunning, her counsel and witnesses from referring to, arguing, interrogating any witness, submitting evidence, commenting on, or otherwise mentioning in the trial, whether during *voir dire*, opening statements, trial, or closing arguments, or otherwise make allegations regarding Skye allegedly "rewarding" Avtar Dhillon by giving him 1,650,000 additional shares of its stock and extending the vesting period while he was facing criminal charges.

In particular, Skye requests that the Court preclude Plaintiff, her witnesses, and her counsel from making reference to accelerated vesting of unvested stock options Dr. Dhillon received from Skye after he terminated his Independent Contractor Services Agreement with Skye.

This motion is made following the Local Rule 16-2 conference of counsel on July 10, 2025. This motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, any and all evidence cited in support of that memorandum, the Declaration of Erika M. Rasch, the Proposed Order, all pleadings and papers filed in this action, and any other and further evidence and argument as may be presented in connection with the hearing on this motion.

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................ 1

II. FACTUAL BACKGROUND .............................................................................. 3

III. PROCEDURAL HISTORY ................................................................................. 4

IV. ARGUMENT ....................................................................................................... 5

    A. Skye's Business Decision Regarding Dr. Dhillon's Stock Options Is Irrelevant to Plaintiff's Claims ............................................... 5

    B. Evidence and Argument About Skye's Business Decision Regarding Dr. Dhillon's Stock Options Is Highly Prejudicial ............... 8

V. CONCLUSION .................................................................................................... 8

PAYNE & FEARS LLP
Attorneys at Law
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

i
DEFENDANT'S MIL NO. 3 TO EXCLUDE EVIDENCE RE SKYE ALLEGEDLY "REWARDING" DHILLON BY GIVING HIM 1,650,000 ADDITIONAL SHARES OF ITS STOCK AND EXTENDING VESTING PERIOD

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Skye's business decision, made more than two years after Plaintiff's termination, to change the vesting schedule for stock options held by Dr. Avtar Dhillon, has no relevance to Plaintiff's claims or Skye's defenses, and it is unduly prejudicial, confusing, and misleading to the jury. The Court should, therefore, preclude Plaintiff from introducing evidence of it.

Dr. Dhillon, the former Executive Chairman of Skye's Board of Directors, was charged with securities violations in August 2021. At the time, he was an independent contractor with Skye, having resigned as Chairman of Skye's Board of Directors in December 2019. Shortly after he was charged, Dr. Dhillon terminated his independent contractor agreement with Skye. In connection with this termination, the company made the business decision to modify Dr. Dhillon's option awards to accelerate the vesting of 1,650,000 unvested stock options and extend the post-termination exercise period from 30 days to five years for all outstanding awards.

Plaintiff wishes to mischaracterize Skye's business decision and tell the jury that Skye "rewarded" Dr. Dhillon's misconduct: "In 2021, Avtar was indicted by the SEC for securities violations in connection with OncoSec and Arch and obstruction of justice. Avtar then resigned from Skye. Skye rewarded him by awarding him 1,650,000 additional shares of its stock and extending the vesting period, despite the fact that he just resigned due to the criminal complaint, Skye was not required to do this and Avtar did not even ask for this reward. This was something Skye decided to do on its own while Avtar was facing criminal prosecution." (ECF No. 59 at pp. 4-5.)

From this mischaracterization, Plaintiff wants the jury to draw the untenable conclusion that Skye, as a general matter, condones illegal conduct and, therefore, it

1

DEFENDANT'S MIL NO. 3 TO EXCLUDE EVIDENCE RE SKYE ALLEGEDLY "REWARDING" DHILLON BY GIVING HIM 1,650,000 ADDITIONAL SHARES OF ITS STOCK AND EXTENDING VESTING PERIOD

is more likely that Skye retaliated against Plaintiff for whistleblowing. The Court should not allow Plaintiff to invite the jury to engage in these logical gymnastics.

Skye's response to Dr. Dhillon's termination of his independent contractor agreement in 2021 is not probative of whether Skye retaliated against Plaintiff in 2019. These two events are temporally distant. They involve different actors (note: Dr. Brian Murphy, the individual Plaintiff claims retaliated against her, had been gone from Skye for a year by the time Dr. Dhillon was charged). And the factual circumstances are entirely different. There is no logical basis for the jury to infer anything about Plaintiff's termination from a stock vesting decision made two years later. Indeed, asking the jury to do so shows that this evidence is nothing more than inadmissible "character" evidence.

Though irrelevant, the evidence of Skye's acceleration of Dr. Dhillon's unvested stock options is highly prejudicial, confusing, and misleading to the jury. The Ninth Circuit has already held that evidence of Dr. Dhillon's guilty plea and SEC judgment should have been excluded from the first trial under Federal Rule of Evidence 403 "because it had very little probative value, if any at all, and it was highly prejudicial." *Cunning v. Skye Bioscience, Inc.*, 2024 WL 4540775, at *1 (9th Cir. Oct. 22, 2024). But if evidence of Skye's business decision — and Plaintiff's characterization of it as "rewarding" criminal behavior — were presented to the jury, it would carry with it the same prejudicial effect as Dr. Dhillon's guilty plea and SEC judgment. Moreover, the notion that Skye "rewards" criminal behavior is inflammatory, confuses the issues, and is highly prejudicial. Such evidence or testimony, if admitted, could incite an emotional reaction and cause the jury to punish Skye for conduct that has nothing to do with Plaintiff.

The Court should, therefore, preclude Plaintiff from offering any evidence or argument about Skye allegedly "rewarding" Dr. Dhillon.

## II. FACTUAL BACKGROUND

Plaintiff is a former employee of Skye. From March 2018 to July 18, 2019, Plaintiff served as Skye's Vice President of Business Operations. Plaintiff's position was eliminated as Skye focused its resources on clinical development. Plaintiff then filed this lawsuit, alleging that she was terminated in retaliation for engaging in protected activity.

Dr. Avtar Dhillon is the former Executive Chairman of Skye's Board of Directors. During Plaintiff's tenure at Skye, Dr. Dhillon was not involved in Plaintiff's day-to-day work activities or her termination. Underscoring this fact, Plaintiff's whistleblower-retaliation claims center entirely on her interactions with Skye's then-CEO, Dr. Brian Murphy. (FAC ¶¶ 23, 25, 26, 30–38; *see also* ECF No. 74 (Pl.'s Mem. of Facts and Law) at p. 3.) Plaintiff has never alleged any illegal conduct at Skye by Dr. Dhillon, and her whistleblower claims do not involve Dr. Dhillon.

On or about December 19, 2019, Dr. Dhillon resigned from the Board of Directors and entered into an Independent Contractor Agreement with Skye. (Rasch Decl. ¶ 4, Ex. B [Trial, Day 4], 30:5-31:24, 66:11-17.)

Dr. Dhillon was later criminally and civilly charged with unrelated securities violations. The charges related to alleged conduct between February 2011 and July 2017 — before any of the conduct at issue in Cunning's claims — and involved other companies, not Skye. H'rg Tr. at 21–26, *United States v. Dhillon*, No. 1:22-cr-10265 (D. Mass. Apr. 7, 2023), ECF No. 51. Dr. Dhillon was criminally charged in August 2021, *id.*, ECF No. 3, pleaded guilty to three counts in September 2022, *id.*, ECF No. 35, and was sentenced to four months imprisonment in December 2024, *id.*, ECF No. 79. In September 2022, Dr. Dhillon entered a Consent to Entry of Final Judgment in the civil action. *SEC v. Mikula, et al.*, No. 2:22-cv-07096-SB-PLA (C.D. Cal. Sept. 30, 2022), ECF No. 4.

On or about September 14, 2021, a month or so after being criminally charged, Dr. Dhillon provided notice to terminate the Independent Contractor Agreement, with an effective date of October 14, 2021. In connection with the termination, Skye modified Dr. Dhillon's options awards to accelerate the vesting of 1,650,000 unvested stock options and extend the post-termination exercise period from 30 days to five years for all outstanding awards. (Rasch Decl. ¶ 3, Ex. A, [P. Dhillon Dep.], 193:17–25.) Skye's current CEO, Punit Dhillon, explained the rationale behind this business decision during his deposition:

> The compensation committee made the determination that Dr. Dhillon shouldn't be, we'll call it, penalized by the company in terms of any stock – stock awards with regards to his – just because he's, you know, terminating. He – he played a valuable role in the company in terms of getting it to this point, and that's basically, recognition of that continued – that – that – you know, that role that he played.

(*Id.* at 194:4–11.)

Skye anticipates Plaintiff will attempt to introduce evidence and argument about this business decision and mischaracterize it as Skye "rewarding" Dr. Dhillon's then-alleged criminal conduct. (*See* ECF No. 59 [Pl.'s Statement of Genuine Disputes of Material Fact] at 4-5 ("In 2021, Avtar was indicted by the SEC for securities violations in connection with OncoSec and Arch and obstruction of justice. Avtar then resigned from Skye. Skye rewarded him by awarding him 1,650,000 additional shares of its stock and extending the vesting period, despite the fact that he just resigned due to the criminal complaint, Skye was not required to do this and Avtar did not even ask for this reward. This was something Skye decided to do on its own while Avtar was facing criminal prosecution.").)

### III. PROCEDURAL HISTORY

On appeal from the first trial in this case, the Ninth Circuit held that evidence of Dr. Dhillon's guilty plea and SEC judgment should have been excluded under Federal Rule of Evidence 403 "because it had very little probative value, if any at

all, and it was highly prejudicial." *Cunning v. Skye Bioscience, Inc.*, No. 23-55248, 2024 WL 4540775, at *1 (9th Cir. Oct. 22, 2024). The Ninth Circuit explained that "[t]he evidence was prejudicial because it allowed the jury to impute onto Skye Dr. Dhillon's unrelated misconduct, related in his indictment, guilty plea, and conviction. . . . [T]he evidence was not relevant to show Cunning's state of mind or a possible reason why she did not complain to the board. The plea and judgment were entered long after Cunning was terminated from Skye, and they therefore could not have affected her decision not to raise her complaints with the board." The Ninth Circuit went on to explain that "the admission of Dr. Dhillon's guilty plea and SEC judgment was reversible error regardless the relevance of or basis for Dhillon's invocations [of the Fifth Amendment]." *Id.* at *1 n.2.

## IV. ARGUMENT

### A. Skye's Business Decision Regarding Dr. Dhillon's Stock Options Is Irrelevant to Plaintiff's Claims

To be admissible, evidence must be relevant. *See* Fed. R. Evid. 402. Evidence is relevant if it is probative and material. *See* Fed. R. Evid. 401. That is, evidence is relevant if it has a "tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." *Id*.

Here, Skye's business decision made more than two years after Plaintiff's termination to accelerate vesting of Dr. Dhillon's unvested stock options and extend the post-termination exercise period for his outstanding awards has no relevance to Plaintiff's claims or Skye's defenses. Plaintiff's *real* relevance theory is the one she presented in her opposition to Skye's motion for summary judgment, namely that Skye somehow "rewarded" Dr. Dhillon's alleged criminal conduct, and that this "reward" somehow evidences Skye's lack of scruples. (*See* ECF No. 59 at 4-5.) This theory fails on multiple fronts.

First, taken at face value, the notion that Skye would have "rewarded" alleged criminal conduct more than two years after Plaintiff's termination — indeed, a year

after Dr. Murphy left Skye — is not at all probative of any material fact. It is not probative of whether Plaintiff engaged in protected activity by complaining about (and to) Dr. Murphy or whether Dr. Murphy retaliated against Plaintiff for these alleged whistleblower complaints. Nor is it probative of Skye's explanation that Plaintiff's termination was the result of a clinical restructuring at the company.

In short, Dr. Dhillon's misconduct had no connection to Skye or Plaintiff. He had resigned his position as Skye's chairman in December 2019, before any of the charges against him. (Rasch Decl. ¶ 4, Ex. B [Trial, Day 4], 66:11-13.) He was only a contractor when he was charged, at which point Skye hired outside accounting and law firms to conduct an investigation that concluded the charges had no connection to Skye. (*Id.* at 30:5-31:24, 66:14-17.) Nothing about the board's later response to Dr. Dhillon's misconduct suggests that it would have ignored Plaintiff's distinct accusations of wrongdoing by Dr. Murphy against Skye and its board.

Second, this relevance theory hinges on the jury being aware of Dr. Dhillon's SEC charges in the first place. But as the Ninth Circuit has held (and as explained in Skye's MIL No. 2), that evidence cannot go before the jury in the first place. Without that evidence, evidence of Skye accelerating the vesting of Dr. Dhillon's stock options is superfluous.[1]

Third, if Plaintiff's theory really is that Skye (or its executives) has an inclination to reward or condone criminal behavior, and that consistent with that inclination it retaliated against Plaintiff for reporting alleged criminal behavior, then

---

[1] Moreover, even if for some reason Plaintiff is permitted to introduce the evidence of Dr. Dhillon's SEC charges under the theory that she is impeaching him under Evidence Code § 609(a)(2), the evidence of Skye accelerating the vesting of Dr. Dhillon's stock options would still be irrelevant because the SEC charges would be admitted for the *limited* purpose of impeachment; if the charges are not admitted for their own independent value, then how Skye allegedly responded to them is not relevant. That said, as argued in Skye's MIL No. 2, evidence of Dr. Dhillon's charges should not be admitted in the first place.

the evidence is inadmissible character evidence. *See* Fed. R. Evid. 404(a)(1) ("Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait."); (b)(1) ("Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.").

Plaintiff has recently proffered new relevance theories for this evidence, all of which are aimed at minimizing the *real* reason why Plaintiff wants this evidence admitted. None has merit. First, she claims that this information is "highly relevant and probative of the retaliatory treatment of her compared to a key decision maker in Skye's activities." (ECF No. 274, at 12:1-3.) But as already explained, Plaintiff and Dr. Dhillon were not similarly situated. Plaintiff is trying to compare apples and oranges. There is no inference of retaliation to be had from the termination of Plaintiff (a VP) in 2019 and a stock decision made two years later regarding the former Chairman. Second, she argues that this information is relevant to "Cunning's lost benefits and compensation." (ECF No. 274, at 12:3.) How? Plaintiff was not on the Board and had a compensation package totally different from Dr. Dhillon's. Third, she argues that this evidence is relevant to showing that "Skye's actions against Cunning had no legitimate basis in fact." (ECF No. 274:4.) This theory does not even make sense. It is not at all clear how a business decision made two years after Plaintiff's termination has anything to do with the reason for Plaintiff's termination (clinical restructuring) or whether that reason had a "legitimate basis in fact."

Simply put, what Skye did in 2021 after Dr. Dhillon was charged has no bearing on the reasons for Plaintiff's termination in 2019. And the only reason Plaintiff can offer for this otherwise irrelevant evidence is squarely prohibited by Rule 404.

### B. Evidence and Argument About Skye's Business Decision Regarding Dr. Dhillon's Stock Options Is Highly Prejudicial

Not only is this evidence irrelevant character evidence, it is also unfairly prejudicial. *See* Fed. R. Evid. 403. A necessary element of Plaintiff's relevance theory is that Skye accelerated the vesting of certain unvested stock options and extended the post-termination exercise period for Dr. Dhillon's outstanding awards to "reward" his criminal behavior. But, as noted already, the Ninth Circuit has held that evidence of Dr. Dhillon's guilty plea and SEC judgment should have been excluded under Rule 403 "because it had very little probative value, if any at all, and it was highly prejudicial." *Cunning*, 2024 WL 4540775, at *1. So, if the evidence of Skye's business decision — and Plaintiff's characterization of it as "rewarding" criminal behavior — were presented to the jury, it would carry with it the same prejudicial effect as Dr. Dhillon's guilty plea and SEC judgment.

Moreover, the notion that Skye "rewards" criminal behavior is inflammatory, confuses the issues, and is highly prejudicial. Such evidence or argument, if admitted, could incite an emotional reaction and cause the jury to punish Skye for alleged conduct having nothing to do with Plaintiff. For example, jurors might wrongfully infer from Skye's decision to provide accelerated vesting of unvested stock options to Dr. Dhillon as evidence that Skye condoned his alleged criminal activity. And though Dr. Dhillon's criminal activity is irrelevant to this case, the jury may choose to punish Skye for its (alleged) response to Dr. Dhillon's criminal activity.

### V. CONCLUSION

The claim that Skye "rewarded" Dr. Dhillon's criminal activity is irrelevant, improper character evidence, highly prejudicial, and certain to confuse the jury. The Court should, therefore, preclude Plaintiff from making allegations regarding Skye allegedly "rewarding" Dr. Dhillon by giving him 1,650,000 additional shares of its stock and extending the vesting period while he was facing criminal charges.

8

DEFENDANT'S MIL NO. 3 TO EXCLUDE EVIDENCE RE SKYE ALLEGEDLY "REWARDING" DHILLON BY GIVING HIM 1,650,000 ADDITIONAL SHARES OF ITS STOCK AND EXTENDING VESTING PERIOD

| | |
|---|---|
| DATED: August 4, 2025 | PAYNE & FEARS LLP<br>Attorneys at Law |
| | By: */s/ Erika M. Rasch*<br>DANIEL F. FEARS<br>ERIKA M. RASCH<br>TYLER B. RUNGE |
| | Attorneys for Defendant SKYE BIOSCIENCE, INC. |

4928-9137-4169.3

PAYNE & FEARS LLP
Attorneys at Law
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

9

DEFENDANT'S MIL NO. 3 TO EXCLUDE EVIDENCE RE SKYE ALLEGEDLY "REWARDING" DHILLON BY GIVING HIM 1,650,000 ADDITIONAL SHARES OF ITS STOCK AND EXTENDING VESTING PERIOD

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Skye Bioscience, Inc., certifies that this brief contains 2711 words, which:

☒ complies with the word limit of L.R. 11-6.1.

☐ complies with the word limit set by court order dated _____.

DATED: August 4, 2025         */s/ Erika M. Rasch*

                              Erika M. Rasch